## TEXAS CITIES GAS CO. v. WELLER.
### No. 3063.

Court of Civil Appeals of Texas. El Paso. Oct: 11, 1934.

Rehearing Denied Oct. 25, 1934.

Turney, Burges, Culwell & Pollard, of El Paso, for appellant.

Isaacks & Lattner, of El Paso, for appellee.

HIGGINS, Justice.

The appellee, Mrs. Weller, brought this suit against appellant to recover damages for the alleged wrongful and malicious act of the defendant in discontinuing the supply of gas to the plaintiff for cooking purposes in an apartment house in El Paso owned by plaintiff and occupied as her residence.

Actual damages in the sum of $500 were awarded, and a like amount as exemplary damages. Judgment in accordance with such awards was rendered, from which the defendant appeals.

On May 5, 1921, the El Paso Gas Company entered into a written contract with Mrs. Weller to supply gas to her at said house. The contract authorized the company "to stop the supply of Gas for non-payment of any bills when due, for any Gas furnished to the subscriber at said premises or elsewhere."

The Texas Cities Gas Company succeeded to the rights and obligations of the El Paso Gas Company under such contract. The service under this contract is referred to as domestic service. On September 28, 1931, Mrs. Weller and defendant entered into another contract by which the latter agreed to furnish gas for building and water heating at the same premises. This service is referred to as commercial service. In article 8 of the latter contract it was provided: "If the Customer shall default in any of said payments for ten (10) days or shall make default in the performance of any other agreement hereunder, the Company may, at any time during the continuance of such default, without notice and without liability therefor, discontinue service hereunder to the Customer until such default is cured. * * * Nothing herein contained, however, nor any action taken by the Company in pursuance hereof, shall impair any other remedy which the Company may have at law or in equity for any breach of this agreement by the Customer."

Article 9 of said contract was as follows: "This agreement supersedes all prior agree-

ments between the Company and the Customer for service mentioned herein. It is subject to all laws and governmental regulations and to the provisions of the Company's franchises, and is not binding upon the Company, unless and until signed by one of its officers or an agent thereunto authorized in writing."

Article 10, in part, further provides: "This agreement supersedes all representations, promises, or other inducements, written or verbal, made with respect to the matters herein contained."

The gas consumed under the two contracts was measured by separate meters.

On July 29, 1933, Mrs. Weller was indebted to defendant in the sum of $86.25 for gas furnished under the commercial contract which was past due, and she was unable to pay same.

For the purpose of forcing her to pay same defendant cut off the supply of gas under the domestic service contract. Thos. M. Gray, credit manager of appellant company, testifying in its behalf, said: "My instruction to Mr. Young was to cut off the domestic supply of gas in order to collect the commercial account."

The supply under the commercial service contract was not discontinued.

### Opinion.

In behalf of the appellant it is insisted that under the terms of the domestic service contract it was authorized to stop the supply of gas for domestic service because of nonpayment of the amount due under the other contract; wherefore no liability upon defendant's part was shown.

The domestic contract, upon its face, authorized the action taken because it specifically permitted defendant "to stop the supply of gas for non-payment of any bills when due, for any Gas furnished to the subscriber at said premises."

When the later contract was entered into it provided that the defendant might discontinue service thereunder upon ten days' default by the customer in the payment of any bills due thereunder. Defendant did not avail itself of that right to enforce payment of the delinquency, but resorted to the provision noted in the domestic service contract. If it was authorized in so doing, then it is because such provision in the domestic service contract provided another and additional nonjudicial remedy to enforce payment of bills under the commercial contract; a remedy not expressed upon the face of the latter contract. But appellant cannot invoke such remedy authorized by the prior contract because the commercial contract provided that it "supersedes all prior agreements between the Company and the Customer for service mentioned herein." This stipulation in the commercial contract nullified the remedy invoked by appellant under the prior agreement. The saving clause in the latter part of article 8 of the commercial contract has no relation to the nonjudicial remedy invoked by appellant. The action taken was unauthorized.

It is further insisted by appellant that it cannot be held liable for exemplary damages because it acted in good faith believing that under the domestic service contract it had the right to stop the supply of gas thereunder because of the delinquency in the commercial account; and that the damages awarded are, in both instances, excessive.

Upon the facts stated, exemplary damages were recoverable. Southwestern G. & E. Co. v. Stanley (Tex. Sup.) 70 S.W.(2d) 413, 415. In this connection we quote the language of Chief Justice Cureton in the case cited: "The motive which actuated the company in cutting its current from Stanley's residence was to force him to pay an account due under another contract, the accuracy of which was in dispute. The action of the company, under all the circumstances, was clearly unwarranted in law, and oppressive in its effect. Its oppressive character was well understood by the company, for its manager said that its purpose was to force Stanley to pay the disputed bill. The company when it acted thoroughly understood that the cut off would deny Stanley the use of electricity at his residence, for the reason that it was the only source of electric supply in the little town where Stanley resided. To say the least of it, the conduct of the company was tortious and oppressive. Under such circumstances, as shown by the Court of Civil Appeals, exemplary damages are recoverable, even where the tortious conduct involves a breach of contract."

We have examined the testimony and see no occasion to interfere with the findings of the jury assessing damages in the sums stated.

The refusal of requested charges 1 and 2 presents no error. The charges were general in their nature, undertaking to instruct the jury as to the law arising upon the facts. In special issue submissions, charges of this nature are improper. Connellee v. Nees (Tex. Com. App.) 266 S. W. 502.

Affirmed.