## VINSON et al. v. CITY OF WINTERS.
### No. 9429.

Court of Civil Appeals of Texas. Austin.

Feb. 2, 1944.

Murphy & Leslie, of San Angelo, for appellants.

Scarborough, Yates & Scarborough, of Abilene, for appellee.

McCLENDON, Chief Justice.

Appeal from an interlocutory order denying a temporary injunction restraining the City "from interfering in anyway with plaintiffs' supply of water" and ordering the City to "deliver to plaintiffs, water pending this suit." The controlling facts are without dispute. In substance they are:

June 9, 1911, Adams (joined by his wife) contracted to convey to the City a tract of land (a part of his homestead of some 322 acres) containing "75 acres more or less." The City was to pay for it upon the basis of $35 per acre as shown by a survey to be made. The contract contained the following pertinent provisions:

"As further consideration for the transfer hereinbefore set out, to be made to The City, conveying said tract of land, it is agreed and expressly contracted that said A. F. Adams shall have certain rights and easements in and to a certain lake or body of water to be hereafter set out in detail.

"It is agreed between the parties hereto, and The City binds itself, that the land herein contracted for purchase and sale, shall be used by said City in the construction, maintenance and operation of a source of public water supply, reservoir, pump station, tracking for freight deliveries, residence for caretaker, truck patch, public park, and other legitimate uses connected with a water reservoir, and for no other purpose.

"The rights and easements referred to in paragraph 5 hereof, shall consist of the right to use, free of charge to him, said A. F. Adams, water for household purposes, for stock water when surface water on his land shall be exhausted, and for irrigating, a reasonable necessary amount, a truck garden patch used in connection with his home, one-fourth acre in size. Said first party shall bear the expense of pipe connections for such uses, and furnish his own material."

September 27, 1911 Adams (and wife) conveyed the tract to the City by general

warranty deed; in which no reference was made to the previous contract or the above noted stipulations therein; the only recited consideration being $2,700 in cash and notes (the recited acreage being 78.1). Shortly thereafter the City constructed a dam which enlarged the capacity of a natural lake on the property, and constructed a system for supplying water to the City and its inhabitants, including a plant and standpipe, situated on other property of the City. Thereupon Adams, at his own cost, laid a pipe which he connected with the city main, through which water was conveyed to his residence and used for domestic purposes, for stock water, and to irrigate a garden of not exceeding ¼ acre. This was continued from 1911 by the Adamses and their vendees without any charge or assertion of a right to charge therefor on the part of the City until August 28, 1943, when the City mailed a letter to Vinson (present owner of the balance of the 322-acre tract under mesne conveyances from the Adamses) reading:

"After having carefully studied the contract made by A. F. Adams and the City of Winters, we, the City Council, do not feel that the City of Winters is under any obligation to continue to furnish you free water.

"Free service will be continued for thirty (30) days, or to October 1st, 1943, on the same basis as to other customers. After October 1st, if you desire to continue to use City water a meter will be installed and you will be furnished water at the same rate as other customers outside the city limits.

"Free service will be discontinued on the above mentioned date."

While there was evidence of a water shortage, and that some rationing had been applied to water takers from the City, it was conceded that the sole ground for the City's refusal to further furnish the service was the refusal of Vinson to agree to pay the regular charges therefor as stated in the letter.

The City urges five grounds in support of denial of a temporary injunction, in substance as follows:

1. The deed from Adams to the City superseded the prior executory contract, hence there was never any obligation for free service.

2. The contract did not provide for free water from sources other than the reservoir. In this connection it was shown that the reservoir was then practically dry and the City's supply came from wells on other property.

3. The city officials were without power to donate treated water under pressure to private citizens.

4. Whatever right Adams acquired was personal to him and not assignable.

5. Appellants had an adequate remedy at law.

The following from a note in 28 A. L.R. at p. 477, is the generally accepted rule applicable to the instant case:

"It is well settled that a temporary injunction may properly be issued to enjoin the threatened cutting off of a customer's water supply for failure to pay a water bill, where there is a good-faith dispute as to the correctness of the amount thereof, or as to his liability therefor."

See also 43 Am.Jur. p. 614, § 66.

This rule is recognized in this State in the following decisions: Southwestern Gas & E. Co. v. Stanley, 123 Tex. 157, 70 S.W.2d 413; Central P. & L. Co. v. Purvis, Tex.Civ.App., 67 S.W.2d 1086, error refused.

That there was a bona fide dispute as to liability for the asserted charges does not admit of serious question. The right in the Adamses and their vendees to the free service had been uniformly and continuously recognized by the City for a period of thirty-two years.

Appellants were entitled to have the status quo preserved pending determination of the controversy over their asserted right to the free service; upon furnishing ample security to the City for its charges, should they be held due. This they offered to do.

"The status quo of the subject matter of the controversy in an injunction suit is, generally, the last actual, peaceable, noncontested status of the parties to the controversy which preceded the pending suit, and which should be preserved until a final decree can be entered." 24 Tex. Jur. p. 123.

For discussion of this subject see McMurrey Refining Co. v. State, Tex.Civ. App., 149 S.W.2d 276 (error ref.).

We express no opinion upon the merits of the controversy, since the only issue now properly involved is appellants' right to have the status quo preserved pending final decree.

The order appealed from is set aside and the injunction will issue requiring the City to furnish the free service pending final decree, upon appellants' giving bond, with two or more sufficient sureties, in the sum of $500, payable to the City, and conditioned for payment to the City of any sums which may lawfully be adjudged to be due it under final decree in this cause. Such bond to be certified as to the sufficiency of the sureties by the District Clerk and approved by the Clerk of this Court. Costs of the appeal are taxed against the City.

Order appealed from set aside.