**BURKE v. SHAFER,**
No. 9516.

Court of Civil Appeals of Texas. Austin.
July 18, 1945.

Rehearing Denied Aug. 4, 1945.

W. H. Lipscomb, of San Angelo, for appellant.

Kerr & Gayer, of San Angelo, for appellee.

McCLENDON, Chief Justice.

Appeal from an interlocutory order granting (after notice and hearing) a temporary injunction, enjoining Burke (pending trial on the merits) from disturbing Shafer in his possession of a section of land in Irion County, referred to herein as Sec. 16.

As the sole question for review the appeal challenges the italicized portion of the following finding and conclusion set forth in the order: *"That there is a bona fide dispute concerning the right to the possession of the lands which, at the institution of this suit were in the actual, peaceable, uncontested possession of Plaintiff,* and that the temporary injunction sought is necessary to preserve the status quo and the subject matter of this suit, until the merits of the controversy may be properly determined by trial or other lawful settlement."

The record shows the following: December 24, 1936, a contract was executed by "D. C. Davis, party of the first part, and A. A. Sugg and Calvin H. Sugg, hereinafter designated as party of the second part," wherein the first party (then owner of the land) leased Sec. 16 and other land to second party "for ranch and grazing purposes" for a period of five years beginning June 1, 1936, "with the option on the part of party of the second part to make an additional five year lease at the expiration of the first 5 years, party of the second part agreeing to notify party of the first part, in writing, of their intention to exercise such option thirty days before the expiration of the term of this lease." The annual rental was 50¢ per acre payable semi-annually on June 1, 1936, and the first day of December and June thereafter "to first party, or his order, at First National Bank of Mertzon, Texas." The same rental applied to the second 5-year period if option were exercised. Lessees had the privilege of sub-leasing, but were not thereby released from their obligation to pay the rent. The lease was signed "D. C. Davis Party of First Part Calvin Sugg Party of Second Part." It was not signed by A. A. Sugg. Lessees were in possession, either in person or through sub-tenant, during the entire first 5-year period, paying the rent as stipulated. April 18, 1941, a letter addressed to Davis at San Angelo, Texas, and signed "Calvin H. Sugg," was properly stamped, addressed and mailed at Mertzon. It read:

"This is to notify you that we, A. A. Sugg & C. H. Sugg, wish to exercise our option to lease for grass your four sections of land, Sections 16, 18, 20 & 30 for five years from June 1st, 1941, to June 1st, 1946."

In answer to a question: "Do you remember whether you received a letter like that?" Davis answered: "I did not receive that letter; there is no remembrance about it." He did testify, however, that a controversy arose between him and Mr. Sugg, which he related as follows:

"Before the expiration of the five-year lease I wanted to raise the lease; I saw the war was coming on and during that time I was having a lot of trouble, and they wouldn't pay it and I backed off and quit and received the money as they sent it.

"Q. When you saw they wouldn't allow you to raise you finally quit trying to raise the price? A. Yes, and received the money and let it go on; we had talked several times about it."

"Q. That was the only controversy between you and Mr. Sugg, and that was for the second five-year period and was in reference to whether the price would be raised? A. Yes."

Further with reference to this controversy, he testified:

"Q. Did you talk to him more than one time about it? A. Yes, I did.

"Q. Was it before they started paying for the second five years? A. Yes, sir.

"Q. Did you mention it to them as much as a month before they started up? A. I am quite sure it was earlier than that."

And further: That he "always received credit for the payment of rentals under the contract in the Mertzon Bank as they became due as long as he owned the land."

June 1, 1941, a contract was executed by A. A. Sugg as lessor and E. H. Shafer as

lessee, under which the former leased the land to the latter for the 5-year period—June 1, 1941, to June 1, 1946. The terms of this lease are unimportant here. Shafer went into possession and so continued up to the date of the order here in issue. As stated all rentals were paid to and accepted by Davis up to June 1, 1944. July 27, 1944, Davis and Burke executed a contract whereby the former agreed to sell the section and other lands to the latter under certain stipulated terms (not here material). The contract contained the following clause:

"It is further agreed and understood that said lands are now under a grazing lease, and that the party of the second part (Burke) takes said land subject to the rights of the tenant in possession, but is to receive all rents and revenues from and after the closing of the sale, which rents will be prorated as of this date."

Davis testified that this contract had been performed.

In December 1944, Burke was credited with six months rent under the lease. He notified the bank not to receive any further rental on Sec. 16, and May 21, 1945, wrote Shafer:

"This is to notify you that I am the owner in fee simple title of Survey 16, Block 2, H. & T. C. Ry. Co. land in Irion County, Texas.

"The contract existing between Mr. D. C. Davis and the Sugg heirs expires May 31, 1945, on the above described land. There is no other existing lease between the owner of this land and yourself or any other person. I therefore, in reply to your notice of May 19th, 1945, notify you and other parties claiming possession of said land, that I will take possession and stock said premises with my own livestock on or after said date, and will proceed to remove any other livestock therefrom."

This suit, which was to enjoin Burke from molesting Shafer in his possession of the property until June 1, 1946, and the order appealed from, ensued.

We gather from the brief and oral argument that appellant's contentions may be stated substantially as follows:

1. The original lease between Davis and the Suggs showed on its face that both A. A. Sugg and Calvin H. Sugg were lessees, and since it was not signed by the latter it was not binding on him; and not being binding on one of the lessees it was not binding on the lessor.

2. Thirty days written notice of exercise of the option to extend the lease was a condition precedent to such right of extension. The letter of April 18, 1941, was ineffectual as such notice for two reasons: (a) It was not received by Davis; and (b) it was not signed by and therefore was not binding on A. A. Sugg.

3. The sub-lease to Shafer was ineffectual because it only purported to be by A. A. Sugg as lessor and was not signed by Calvin H. Sugg.

██ Contention 1 is manifestly without merit. The lease as executed was recognized and acted upon by all parties thereto for a period of over eight years, the lessor yielding possession to lessees and accepting rent from them in literal compliance with the contract for that entire period. It was also recognized by Burke in the acceptance of rental installment of December 1944; in his letter of May 21, 1945; and expressly in his testimony wherein he stated that he recognized the Sugg lease but not the Shafer lease.

The second contention is overruled for the following reasons:

█ 1. We think it unimportant that only one of the lessees signed the notice.

█ 2. A rule of long standing is thus expressed in 17 Tex.Jur. 273, § 74: "It is presumed that a letter, notice or other communication, properly stamped, directed and mailed was delivered to the addressee in due time." This is of course a rebuttable presumption; but it is not conclusively rebutted (as a matter of law) by testimony of the sendee that he did not receive the letter. The following is from the opinion of the Supreme Court of the United States in Rosenthal v. Walker, 111 U.S. 185, 4 S.Ct. 382, 386, 28 L.Ed. 395:

"The rule is well settled that if a letter properly directed is proved to have been either put into the post-office or delivered to the postman, it is presumed, from the known course of business in the post-office department, that it reached its destination at the regular time, and was received by the person to whom it was addressed (citing a number of cases). As was said by Gray, J., (Mass.) in the case last cited, [Huntley v. Whittier, 105 Mass. 391, 7 Am.Rep. 536], 'the presumption so arising is not a con-

clusive presumption of law, but a mere inference of fact, founded on the probability that the officers of the government will do their duty and the usual course of business; and, when it is opposed by evidence that the letters never were received, must be weighed with all the other circumstances of the case, by the jury in determining the question whether the letters were actually received or not.' "

There are a number of circumstances which might indicate that Davis was mistaken in his statement that he did not receive the letter (and this assuming his sincerity in the statement). In the first place, it had been four years between the date the letter was mailed and the date of his testimony, and human recollection is known to be fallible. Again, Davis manifestly attached no importance to the requirement that the notice be in writing, which fact would add strength to the theory that he received the letter and forgot all about it; which brings us to a further reason for rejecting the second contention.

3. Written notice of exercise of an option to extend a lease may be waived by the lessor even though such written notice may constitute a condition precedent to exercise of such option. Dockery v. Thorne, Tex.Civ.App., 135 S.W. 593, error denied (refused). If in fact Davis did not receive the notice of renewal, it is clear that he waived written notice by his stated action in conceding the right of the Suggs to renew without increase of rental and accepting the rental for four years upon the concession that the right of renewal had been properly exercised by the Suggs.

It would appear from Burke's letter of May 21, 1945, that while recognizing the Davis-Sugg lease, he regarded the continued possession and payments of rentals by Shafer as a mere holding over from year to year under the Davis-Sugg lease. We cannot give the actions of the parties this interpretation under the record showing. The Suggs and Shafer were claiming under exercise of an option of renewal for a five-year period. The evidence was clearly sufficient to support that claim.

Upon contention 3 it is hardly necessary to say more than that Burke had no interest in whether Shafer's lease was binding upon both the Suggs. That was a matter between the Suggs, or Calvin H. Sugg on the one hand and Shafer on the other. So long as the Suggs were satisfied and Shafer received his rent in accordance with the Davis-Sugg lease, Burke had no legitimate complaint. He was not entitled to possession of the property as against the Suggs, and therefore not against one claiming under and with the consent and approval of the Suggs. It is to be noted in this connection that the contract of sale under which Burke acquired all the rights he possessed in this suit expressly provided that "said lands are now under grazing lease" and that Burke "takes said land subject to the rights of the tenant in possession." That contract was signed by both Davis and Burke July 27, 1944. At that time Shafer was the tenant in possession and had been such for the immediately preceding three years. This was an express recognition of the tenancy of Shafer and of the lease contract which created such tenancy.

While we do not pass upon the merits of the case, it is clear from the foregoing that the trial judge was correct in his finding that there was at least a bona fide dispute concerning Shafer's right to the possession of the lands, and the conclusion that he was entitled to have that possession preserved pending trial on the merits. The authorities on this subject are not in material conflict. See Vinson v. City of Winters, Tex.Civ.App., 178 S.W.2d 142.

The order appealed from is affirmed.

Affirmed.