## RICHMOND v. BROUGHTON.

### No. 14728.

Court of Civil Appeals of Texas.
Fort Worth.

Nov. 16, 1945.

Rehearing Denied Dec. 14, 1945.

Richard Owens, of Fort Worth, for appellant.

R. F. Milam and N. A. Dodge, both of Fort Worth, for appellee.

BROWN, Justice.

Sometime in the month of October, 1944, one Mrs. Doris E. Ross entered into an oral contract to purchase the property, over which the present controversy arose, from appellant C. E. Richmond. She endorsed and delivered to Richmond a certain promissory note owned by her and executed by one Elliott, and Mrs. Ross immediately went into possession of the premises.

It appears that such premises were a part of a large lot owned by Richmond on which there was situated another dwelling that was then rented to a tenant.

It further appears that there were no utility meters and service designed for the exclusive use of the premises in controversy, but that there had been constructed gas lines, water lines, and electric wires running from the said larger dwelling to the small dwelling in controversy, and that all water, gas, and electric current that went into the smaller dwelling came through the utilities' meters that were installed for the larger house.

It further appears that when Mrs. Ross agreed to purchase the smaller dwelling, she agreed with Mr. Richmond that if he would continue to permit the several utilities to furnish the said products to the smaller dwelling, she, Mrs. Ross, would pay Richmond the difference between the utility bills that accrued when only the large dwelling was being serviced thereby and the bills that would accrue when both houses were serviced through the same meters.

It further appears that shortly after Mrs. Ross moved into the small dwelling she repudiated her oral contract to purchase the premises, she demanded of Richmond that he return the aforementioned promissory note, and she notified the maker of the note not to pay Richmond anything on the note.

While this controversy was going on and Mrs. Ross was contending that she was not and would not be bound by her oral contract to purchase the premises and at a

time when she was demanding the return of the said promissory note, Mrs. Ross made some character of rental contract with James W. Broughton (who is appellee here) and he and his wife and two small children moved into the said dwelling. We gather from the record that Mrs. Ross was holding the premises on some theory that she had an equitable lien on them to secure the return of or the value of her said promissory note.

It appears that the Broughtons knew there was a controversy over the premises as between Richmond and Mrs. Ross, but that the Broughtons were distressed over the housing situation, and they moved in and simply took their chances, insofar as the controversy was concerned.

It appears that Mrs. Ross rented the disputed premises to the Broughtons for $50 per month and that she agreed to furnish the utilities.

When Richmond learned that the Broughtons were occupying the disputed premises, he told them, as had Mrs. Ross, that there was a dispute about the premises and that they should be very cautious in the matter of prepaying any rent to Mrs. Ross; that they might lose such prepayments.

It is undisputed that Broughton was out of the city on several occasions during the time the Broughtons remained in the house. It is also undisputed that Richmond discussed the matter of not being paid for the utilities furnished the premises and that he presented Mrs. Broughton with a bill for same, but she thought that it covered some time during which the Broughtons had not been in possession and, furthermore, she told Richmond that when her husband returned, he would see Richmond about the bill for the utilities. It is undisputed that Mrs. Broughton told her husband about the matter and it is also undisputed that Broughton did nothing about it. His excuse for not so doing is partly that he didn't have time to see Richmond and partly that he thought it was Richmond's business to look him up.

On January 9, 1945, Richmond went out to the large house and personally severed all pipes and wires that led from the large house to the small one occupied by the Broughtons and cut off all the said utilities.

Within three days after Richmond cut off the utilities, Mr. Broughton re-connected the gas and water pipes, and the testi-

mony is that the premises were then only partially serviced with such utilities.

On the 16th day of January, 1945, Broughton filed suit against Richmond for actual and exemplary damages because of the severance of the said utility pipes and wires.

He alleged the facts with reference to the utility connections on the disputed premises and that he and his family "were peacefully occupying the house and premises. * * * That because the plaintiff was unable to find other housing for himself and family on said day (January 9, 1945) and theretofore they were sharing said house and premises with one Doris E. Ross, a widow, who was in possession thereof and holding same as plaintiff was informed as security for return to her of a promissory note for about $988.00 then in the hands of the defendant Richmond, the ownership of which house and note was in dispute between Mrs. Ross and the defendant, he claiming to have sold said premises to her and received the note in part payment, and she claiming she had not bought the property and had not parted with title to the note."

As a predicate for damages, he alleged that he and his family "were subject to great annoyance, inconvenience, hardships, actual and threatened illness and deprived of the comfort and enjoyment of their said temporary home. That his wife and children developed colds and the baby was threatened with pneumonia. That on account of the then existing housing shortage in the city of Fort Worth and vicinity where the plaintiff was stationed for performance of his war duties, he was and has since been unable to secure another home for himself and family. That the defendant was fully aware of the said housing shortage and purposely intended to inflict upon the plaintiff and his family the discomforts and hardships complained of in this pleading."

He sues for $5000 actual damages and a like sum "as exemplary damages by reason of the said malicious acts of the defendant."

Defendant Richmond answered to the effect that he had orally agreed to sell the disputed premises to Mrs. Ross and that he permitted her to go into possession thereof only on her promise to purchase the premises, he alleged the terms of the oral contract and the delivery of the said Elliott note to him; that immediately after going

into possession of the premises, Mrs. Ross repudiated her agreement to purchase same, claiming that she was not bound because the agreement was not in writing, demanded the return of the Elliott note, notified Elliott not to pay Richmond anything on the note; that Elliott paid nothing and Mrs. Ross made no monthly payment to him, as she had agreed to do.

He alleged the facts concerning the physical status of the utilities' service in connection with his two houses, and that he had agreed with Mrs. Ross that she could use the utility pipes and wires (if she purchased the premises) if she would pay him the reasonable value of same.

He next alleged that shortly after Mrs. Ross took possession of the premises and at a time unknown to him and without his permission, she permitted plaintiff to go into possession of the premises; that after he discovered plaintiff in the place, he demanded payment for the use of the utilities, which payment was refused; that he severed the said pipes and wires to prevent plaintiff from using them, and that plaintiff, shortly after such severance, reconnected the utility lines and continued to use them wtihout paying therefor.

He alleged that he never at any time had any contract with plaintiff either to occupy the premises or to furnish him with utilities, and that it was only in defense of his rights and to protect his property rights that he cut the utility lines. He further pleaded the fact that Mrs. Ross had filed suit against hims for possession of the said Elliott note and that he, Richmond, had filed a cross-action in such suit against plaintiff for possession of and title to the premises in dispute, and alleged that the judgment rendered in such suit on to-wit, April 17, 1945, awarding possession of the premises is res adjudicata of any right of possession claimed by Broughton.

The cause being tried before a jury, the following special issues were submitted and answered: (1) Did Broughton rent the premises from Mrs. Ross? Answer: Yes. (2) Was Mrs. Ross, at the time she rented the premises to Broughton, in possession of same? Answer: Yes. The 3rd issue is: "Do you believe and find from a preponderance of the evidence that Mrs. Ross was in possession of the premises by reason of a contract of sale that she entered into with the defendant Richmond?" Answer: Yes. (4) Was Broughton in the premises with the consent of Richmond? Answer: Yes. (5) Was Broughton damaged by the severing of the utility lines? Answer: Yes. (6) The amount of damages? Answer: $1000.00 (The trial court instructed the jury that there could only be considered, in arriving at the amount of damages: The annoyance, inconvenience, hardships, and lack of comfort suffered by Broughton and his wife). (7) Did Richmond act with malice? Answer: Yes. (8) The amount of exemplary damages was fixed at $500.

On this verdict the trial court rendered judgment against Richmond for $1500 and he appeals.

The first point presented contends that Richmond was under no obligation to furnish the utilities to Broughton, who had no contract with Richmond relating to the furnishing of same.

To us this point is the crux of the law suit.

The action by Broughton is sounded in tort.

■ In an opinion adopted by the Supreme Court it is said that "damages are a sum awarded to one because another has wrongfully invaded his rights contrary to agreement or contrary to law." See Burns v. American Nat. Ins. Co., Tex.Com.App., 280 S.W. 762, 764.

Broughton neither established nor attempted to establish that he had any right to the use of the utilities by or through any agreement with Richmond. Whatever right he had even to occupy the premises was derived from some contract he had with Mrs. Ross.

Let us see what right to the possession and occupancy of the premises Mrs. Ross had. It is undisputed that Mrs. Ross went into possession of the premises because she made an oral contract to purchase same from Richmond, and it is also undisputed that she immediately repudiated the agreement and demanded that Richmond return to her the Elliott note which she had endorsed and delivered to Richmond as part payment for the premises. She contended that she could not be bound by the oral agreement to purchase. In her suit against Richmond he prevailed, as was shown by a copy of the judgment she obtained, but such judgment awarded Richmond a recovery of the reasonable rental value of the premises for the time that Mrs. Ross had held them. The judgment likewise gave Richmond possession of the premises

as against Broughton and wife and all other parties to the suit.

The only right of possession that was contended for by Mrs. Ross in that suit is bottomed on the theory that Richmond was wrongfully holding her note (executed by Elliott) and that she was holding the premises under some equitable lien to secure the recovery by her of said note.

That character of possession, even if she had an equitable right thereto, gave Mrs. Ross no right to rent the disputed premises to Broughton.

The judgment against Mrs. Ross and against the Broughtons, from which no appeal was taken, settles the question of such right of possession, and the trial court awarded Richmond recovery of a portion of the Elliott note to satisfy his judgment against Mrs. Ross for withholding and using the disputed premises.

Even if Mrs. Ross could successfully contend that she was in possession of the premises under some character of tenancy, she had no right or authority to sub-let or rent the premises to Broughton, and bind Richmond to recognize Broughton as his tenant.

Article 5237, R.C.S., provides that one who is renting lands or tenements "shall not rent or lease the same during the term of said lease to any other person without first obtaining the consent of the landlord."

It is undisputed that Mrs. Ross put the Broughtons in possession of the premises without Richmond's knowledge or consent thereto.

The mere fact that Richmond did not interfere with Broughton's possession only establishes the fact that Broughton was Mrs. Ross' tenant—not Richmond's. See Burton-Lingo Co. v. Morton, Tex.Civ.App., 126 S.W.2d 727, affirmed 136 Tex. 263, 150 S.W.2d 239. In Vol. 27, Tex.Jur., p. 368, para. 219, it is said that one who enters into demised premises, under a contract of subletting, without having the consent of the lessor, is a trespasser and stands as to the owner or original lessor in the position of a stranger.

For argument's sake only, let us say that the Broughtons had a right to rely upon Richmond's agreement had with Mrs. Ross, with regard to the use of the utilities. What was such agreement and was it enforceable by Mrs. Ross?

The undisputed evidence shows that Richmond made some oral agreement with Mrs. Ross that if and when she purchased the premises, she could use the utility pipes and lines, provided she paid her portion of the utility bills that would accrue.

Such a contract was terminable at will by either party. Richmond was under no legal obligation to furnish the utilities for any definite length of time, and Mrs. Ross was under no legal obligation to use Richmond's utility pipes and lines for any definite length of time. This oral contract was not enforceable by Mrs. Ross and her tenant, Broughton, could acquire no greater right than she had.

Appellee Broughton relies upon Southwestern Gas & Electric Co. v. Stanley, Tex.Civ.App., 45 S.W.2d 671, affirmed in 123 Tex. 157, 70 S.W.2d 413, as the authority for a recovery of the character of damages sought and recovered in the instant suit, but the predicate for such a suit as was then before the courts is not present in the case before us.

In the "Stanley" suit, Stanley had two contracts with the above-named public utility—one to service his shop, or place of business, the other to service his home. Separate meters were installed in these separate premises to service them. Stanley had an argument and controversy over the bill rendered for servicing his place of business and did not pay the bill as rendered. The utility company after demanding payment, cut off Stanley's home, although Stanley had no controversy with it over the "home bill" and tendered the amount of the last accrued bill, which the company refused.

In affirming the judgments of the trial court and the Court of Civil Appeals, the Supreme Court said there were two reasons why the judgment should stand: 1st, the utility breached a contract had with Stanley to service his home, and 2nd, the utility company was a public service company and its duty to supply Stanley arose not only from its contract, but also from its public duty as well. The case is obviously not an authority for the situation before us.

Richmond being under no duty whatever to furnish either Mrs. Ross or the Broughtons with the utilities, it follows that Broughton cannot recover damages from Richmond because he refused to

furnish same, regardless of the means used by Richmond to prevent Broughton from obtaining gas, water and electricity through Richmond's pipes and lines.

The judgment of the trial court awarding actual and exemplary damages for appellee against appellant is reversed and here rendered for appellant, and the judgment denying appellant a recovery on his cross action for damages against appellee is left undisturbed.

Reversed and rendered in part and left undisturbed in part.