Louis GALE, dba Gale Builders Supply Company, Appellant,

v.

Frank SPRIGGS et ux., Appellees.

No. 3835.

Court of Civil Appeals of Texas.

Waco.

May 11, 1961.

Rehearing Denied June 1, 1961.

Abe Dunn, Houston, for appellant.

Bryan & Patton, Houston, for appellees.

TIREY, Justice.

This action by Spriggs and his wife was brought against the building contractor for breach of a written construction contract that provided for the addition of one room to their home. The contractor filed a counter action against the plaintiffs alleging that the contract had been substantially performed and that he was entitled to receive compensation on a quantum meruit basis. The jury, in its verdict, found substantially: (1, 2 and 3) That the contractor failed to perform in a good and workmanlike manner the construction work on the addition to plaintiffs' home, and that such failure could not be remedied without impairing the existing building, and that the reasonable market value of plaintiffs' home on the date when the contractor last performed any work to be $9,800; and (4) That the reasonable market value of plaintiffs' home on the date when the defendant last performed any work on it if the addition to it called for by the contract in question had been completed in a good and workmanlike manner would have been $12,500. The jury was instructed: "If you have answered Special Issue No. 1, 'We do', and only in that event, then answer Special Issue No. 7." (7) "Do you find from a preponderance of the evidence that such failure, if any, was done with malice?" to which the jury answered "We do." The court instructed the jury: "By the term 'malice', is meant the doing of an act willfully and knowingly in violation of the rights of the plaintiffs and to his injury." The court further instructed the jury: "If you have answered Special Issue No. 7, 'We do', and only in that event, then answer Special Issue No. 8." (8) "From a preponderance of the evidence, what amount of exemplary damages, if any, do you find in favor of the plaintiffs against the defendant?" to which the jury answered "$1500.00". (9) That the contractor did not substantially perform, in good faith, all of the remodeling in accordance with the contract entered into with the plaintiffs; and (11) That the addition to plaintiffs' house, in the condition it was in when the defend-

ant last performed any work, failed to enhance the value of plaintiffs' property; and (12) That the plaintiffs did not prevent the contractor from completing the job in accordance with the contract.

The court overruled the contractor's motion for judgment non obstante veredicto and granted plaintiffs' motion for judgment, and in the judgment we find this recital: " * * * based upon the answers and verdict of the jury, that plaintiffs are entitled to the following judgment against the defendant: * * * that plaintiffs, * * * recover of and from the defendant the sum of $4200.00, which amount shall bear interest at the legal rate of 6% per annum from the date of this judgment until paid; and that plaintiffs further * * * recover from the defendant all costs of court incurred in this cause. * * *" Defendant seasonably filed his motion for new trial and it being overruled perfected his appeal to the Houston court and the cause is here on transfer.

The judgment is assailed on what appellant designates as three points, they are substantially to the effect that the Court erred: (1) In failing to grant defendant's petition for discovery, inspection and photographing in order that he might make a proper appraisement, inspection, measurement and exterior photographs of the work done by him; (2) In granting a judgment to the plaintiffs for exemplary damages in the amount of $1,500 because there was no evidence to raise such issue and no evidence to support the finding of the jury and that such findings are contrary to the overwhelming preponderance of the evidence as to be manifestly wrong; (3) That the court erred in submitting Special Issue No. 4, because it assumed that the building was not constructed according to the contract, and that such issue was not an independent issue, but should have been predicated on Special Issue No. 1, which had to do with whether or not the defendant had failed to perform in a good and workmanlike manner the work on the building.

Evidence was tendered to the effect that appellees' home was off the Hempstead Highway within the city limits of Houston, and for this home they had paid $10,350, the exact date of the purchase is not shown; that in August 1958, appellees entered into a written contract with appellant to put an addition on their house, such addition to consist of a den, bath and closet; that work was started about August 23, 1958; that appellant promised to take care of the necessary permits, and that this he failed to do; that on September 9, 1958, an inspector from the City of Houston went to the job site and stopped the job and ordered the builder to come in for a permit; that the concrete slab had already been poured, and the framing and siding and roof were already on, and the interior sheetrock had been installed; that under these conditions. the inspector could not inspect the slab and could not tell if it would pass inspection. The city plumbing inspector testified to the effect that he went to the job site on a report of work being done without a permit, and he found the plumbing already "roughed" in and the work that had been done covered up; that he found one pipe laid on top of a sidewalk, contrary to the city code, and that he could not determine if the plumbing work at the time he was out to make an inspection would pass the city inspection. It appears that while he was out at the job site, or along or about that time, that the plumbing permit was obtained. The city electrical inspector testified that he first went to the job on September 12, 1958 for the purpose of checking the work, because no permit had been issued; that the city routinely makes one inspection when the framework is up, and before any sheetrock is put on; that thereafter a final inspection. is made after the completion, but when he arrived the wiring was all enclosed and he could not make an inspection at all; that no electrical permit had ever been issued up to the time of the trial, and he could not say whether it would or would not pass. inspection, as the wiring was all covered over; that the electrical meter had been. moved without a permit. Testimony was.

also tendered to the effect that the job was done in an extremely poor manner; that the foundation was not square; that the walls were out of plumb; some of the windows were out of plumb; that the roof was buckled; that the foundation was not properly tied in to the existing slab; that the slab appeared to be defective as evidenced by moisture inside the room; that the slab was not properly beamed around the edges; the windows were not properly installed; that the addition was so poorly constructed that it actually caused the value of the house to depreciate. Testimony was also tendered to the effect that with the addition in its existing state, the house had a value of $9,875, but the house without the addition even being on it, had a value of $10,600. Testimony was further tendered to the effect that had the addition been completed in a good and workmanlike manner, it would have increased the value of the house to $12,500 from the $10,600 value it had before the addition was put on. Testimony was further tendered to the effect that before the addition could be put in a livable condition, it would have been necessary to remove the cedar shakes to permit an electrical inspection; that the windows and doors would have had to be removed and reinstalled so as to match the rest of the house; remove the water connection above the ground and install it below the ground; remove the shakes and framing to plumb the west wall; install an eighteen inch beam under the existing slab; plumb the other walls as needed, finish the inside plumbing, level the slab and install asphalt tile; install electrical circuits, and that it would be necessary to weather strip and fit the doors, varnish and paint the interior, flash the roof, remove the buckles from the roll roofing, and square the foundation. The defendant tendered several witnesses, among them was Mr. Kalmick, sales manager who obtained the contract from the plaintiffs, and it is undisputed that the total contract price was to be $2,380. Mr. Pyle, the cement contractor, was tendered as a witness, and he testified to the effect that the work as a whole was constructed in the usual and customary manner, and in accord with the method for soil conditions that existed in Houston. A Mr. Barlow, the plumber, testified to the effect that he was a master plumber, and that he "roughed" in the work, and that the work was done in a good and workmanlike manner. Mr. Ben Ross testified to the effect that he was the expediter and general supervisor for the defendant, and that he supervised all the construction jobs of the company, and he had been with the company since 1954; that he was on the job from time to time as and when needed; that he kept up with the work and corrected the complaints made to him by the plaintiffs, and he testified in great detail as to the construction and installation of all the work. He was interrogated very fully about the construction generally, and about the plumbing and the electrical fixtures, and assuming that the inquiries related to poor construction were true, etc. that it would cost approximately $591.20, to complete the job, and that this would amount to completing it in a good and workmanlike manner. In fact, he testified specifically:

"Q. All of these items that we have here, Mr. Ross, could you possibly send out some men and get that work done for the figure that we've got up there? A. Probably a little less—I can do it.

"Q. You could do it and still come out with a profit of approximately $100.00 or better at $591.00? A. Yes, sir."

 Going back to Appellant's Point 1, the record shows that plaintiffs' first amended original petition was filed October 29, 1959. On December 18, 1959, appellant filed his petition for discovery and inspection. In this application he alleged in effect that since the work was done by him on the premises owned by plaintiffs, that it was necessary in order for him to make the proof of the work done by him, including the quality and quantity that it was essential for him in the preparation of his defense that he should be allowed

"* * * to select an Appraiser, Architect, and/or Contractor, of this Petitioner's own selection, to make an appraisal, inspection and to make measurements of the work done by this Petitioner, and that such appraisal, inspection and measurements be made by said Appraiser, Architect, and/or Contractor in company with this Petitioner, or his authorized representative, without the interference of the original plaintiffs, their agents, servants, or employees. * * *" And he prayed for appropriate relief. The trial court entered an order to the effect that defendant be allowed to take photographs of the interior of the house owned by the plaintiffs and fixed the hour for so doing beginning at 9 o'clock on January 5, 1960, and limited the time to one hour, and denied all other relief. The record discloses that appellant's attorney and· a photographer went to plaintiffs' residence at the appointed time, and took moving pictures of the entire interior of the addition, and this picture· was admitted in evidence. We are of the view that there was no reversible error in the court's refusal to grant appellant's petition to discover in its entirety, for reasons which we shall hereinafter briefly state. As pointed out, appellant's petition for discovery requested: (1) That an appraiser, inspector or contractor be allowed to make appraisement, inspection and measurements of the premises, and that photographs of the building be taken. As we have previously stated, the court allowed the photographs, and there is evidence to the effect that at the time of hearing on Motion to Discover, appellees turned over pictures of the exterior. On trial, plaintiffs tendered a Mr. Favella, who testified to the effect that he was a real estate appraiser and a home builder, and that he had been a real estate appraiser about 23 years, and had been in the home building business approximately 10 years, and had testified as to having inspected plaintiffs' premises at the request of plaintiffs, and he testified in detail as to the work that was done by the contractor, and wherein the contractor. had failed to perform such work. It was also brought out that appellant's attorney had approached Mr. Favella for the purpose of getting him to make an inspection and appraisal of the house for the defendant, and Mr. Favella informed such attorney that he had previously been employed by the plaintiffs and had made such inspection. There is an absence of testimony that appellant employed, or tried to employ any other appraiser to look at the property, nor did he tender any appraiser or contractor to testify in appellant's behalf for the purpose of tendering to him hypothetical questions as to the value relating to the construction of the building. Moreover, appellant was in the general business of a contractor, and he was not tendered as a witness, and in addition to that, he had his agents and employees who had done the work on the building, and no doubt they were better informed, and in a better position to testify to the work and type of construction than anyone else appellant could have obtained for this purpose. Many pictures were introduced, both as to the outside and inside of the building and the moving picture taken by appellant was tendered in evidence. Moreover, the petition for discovery shows that appellant's motion was directed to an agent to obtain evidence as to the quality of the work, and not the value. Obviously the evidence of the quality of work was better known to appellant himself than any other person who might have gone upon the premises, because he had his own workers and agents to interview, and they were tendered as witnesses. Certainly these witnesses were more familiar with the quality of the type of construction than anyone else. As we understand appellant's brief, he takes the position that the court's .refusal to allow an appraiser to go upon the property, prevented him from offering any evidence of value. We cannot agree with this contention. While it is true that appellant offered no such evidence, it does not follow that such evidence was not available to him, if he had taken the trouble to obtain it. It

is without dispute that appellant had pictures of the interior and exterior of the building—he knew exactly what materials went into the building, and his agents could tell him all about the construction. Surely an appraiser could have viewed the property from the surrounding neighborhoods or from some public streets or some adjoining property, and it was not necessary for an appraiser under all the facts and circumstances to enter upon appellant's land and view the building. Such appraiser could have testified and given an opinion based purely on hypothetical questions. It is well settled that value testimony may be based purely upon hypothetical questions. See A. B. Lewis Co. v. Robinson, Tex.Civ.App., 339 S.W.2d 731. Moreover, the granting or refusal of discovery proceedings is discretionary with the trial court. See Robb v. Gilmore, Tex.Civ.App., 302 S.W.2d 739, writ refused, n. r. e. We see no showing here that the trial court abused his discretion in refusing a portion of appellant's motion to discover, and no showing that in so doing such refusal was harmful or prejudicial. The only harm to appellant in that regard was his own failure to present evidence. There is an absence of showing that appellant made any attempt to obtain such evidence, and no showing as to what some other appraiser believed the value to be. Since there is an absence of testimony to the effect that appellant made any effort to get anyone (save Mr. Favella) to look at the property and make an appraisal thereof, and likewise an absence of testimony to the effect that the plaintiffs personally refused the appellant permission to bring appraisers on the property to make such appraisal; and since it is without dispute that the property was visible from adjoining property and from the streets adjacent to it, yet appellant tendered no testimony to the effect that he requested or had anyone look at the property for the purpose of making an appraisal thereof, and since there is no testimony that under all the facts and circum-

stances an appraisal of the plaintiffs' loss or gain by reason of the work done, could not have been made by observation under all the facts and circumstances of the entire record, and by the use of hypothetical questions, we are of the view that the trial court's action in failing to grant plaintiff's motion in its entirety, if erroneous, under Rules 167 and 737, Texas Rules of Civil Procedure, and under the authority of Hastings Oil Co. v. Texas Co., 149 Tex. 416, 234 S.W.2d 389, is harmless. Moreover, we are not satisfied that the error complained of was reasonably calculated to cause, and probably did cause the rendition of an improper judgment in this cause. See paragraphs two in Rules 434 and 503 of T.R.C.P., and City of Austin v. Cannizzo, 153 Tex. 324, 267 S.W.2d 808, point 4 at page 813.

■ Appellant's second point is to the effect that the Court erred in allowing the jury's award for $1,500 exemplary damages, because there was no evidence to raise such issue, and no evidence to support such finding, and that such finding was contrary to the overwhelming preponderance of the evidence as to be manifestly wrong. We sustain this contention. We have previously set out in some detail the very poor manner in which the appellant permitted this work to be performed, and it would serve no useful purpose to repeat it here. It is our view that after reviewing the entire evidence, that the jury had an ample basis for finding that the defendant failed to perform the contract in a good and workmanlike manner, but such testimoy fails to show malice. It is true that no excuse was offered as to why the defendant failed to obtain the necessary city permits in order that this work could be properly inspected at the proper time. The contractor was evidently experienced—he had been in the business a long time—he had a supervisor or manager who had been with him since 1954, and no explanation is given as to why the work was done so poorly, or why

they failed to obtain the necessary permits at the proper time, but such testimony does not tender the issue of malice. We think the evidence is ample to support the fact that Mr. Ross was an agent of the appellant acting in a managerial capacity. See Fort Worth Elevators Co. v. Russell, 123 Tex. 128, 70 S.W.2d 397; Morton Salt Co. v. Wells, 123 Tex. 151, 70 S.W.2d 409; Southwestern Gas & Electric Co. v. Stanley, 123 Tex. 157, 70 S.W.2d 413. Under the record here before us if we should be mistaken in holding that there is no evidence of malice and could reach the point of insufficiency, or the great weight and preponderance of the evidence, each of these points would be sustained. See Texas Law Review, April 1960, Vol. 38, No. 4, Article "No Evidence" and "Insufficient Evidence", by Justice Calvert of the Supreme Court, and authorities there cited. This view requires us to deny plaintiffs' recovery for exemplary damages. See King v. McGuff, 149 Tex. 432, 234 S.W.2d 403.

■■■ Appellant's third point is to the effect that the court erred in submitting Issue No. 4 of its main charge, because it assumed a disputed issue of fact that the building was not constructed according to the contract, and that such issue should not have been an independent issue but should have been predicated on Issue No. 1, which issue had to do with whether or not defendant failed to perform in a good and workmanlike manner the construction done by defendant on the addition to the plaintiffs' home. We overrule this contention for reasons which we shall hereinafter briefly state. Let us consider appellant's objections to the court's charge relating to Issue No. 4; they are substantially:

(a) There is no evidence upon which to predicate an affirmative answer to said issue;

(b) That an affirmative answer to said issue would be against the weight of the credible evidence;

(c) There is insufficient evidence upon which to base an affirmative answer to said issue;

(d) There are no pleadings upon which to base submission of said issue.

It is true that appellant, in his motion for new trial, alleged that the court erred in submitting Issue No. 4, because it assumed a disputed fact, and because the issue should have been conditioned upon an affirmative finding on Issue No. 1, as to whether the construction was done in a workmanlike manner; however, there was no objection to the charge to the effect that the issue was assumptive, and needless to say that this objection came too late under Rules 272 and 274 T.R.C.P. The principle of law stated by appellant does not come into application, and cannot be considered here since the error, if any, was not preserved for appellate review. It is our view that none of the exceptions of appellant to the charge touch the point for which he now contends. We think it is well settled that failure to raise the objection specifically before the charge is given to the jury results in a waiver of that objection. See McCullom v. McClain, Tex.Civ.App., 227 S.W.2d 333, n. w. h. Our Supreme Court in Edwards v. Strong, 147 Tex. 155, 213 S.W.2d 979, point 5 at page 981, made this statement of the Rule:

"The petitioners Edwards urge error in the form of the submission of Special Issue No. 6 by the trial court, but since the objection presented here was not raised by an exception to the court's charge, as required by Rule 272, Texas Rules of Civil Procedure, the asserted error is deemed waived under Rule 274, Texas Rules of Civil Procedure."

Our Supreme Court has not seen fit to modify the foregoing interpretation of Rules 272 and 274, and we think such interpretation is applicable to the factual situation here. See also opinion of this Court, Missouri Pacific Railroad Co. v.

Ramirez, 326 S.W.2d 50, n. r. e., and cases there cited. See also Whatley v. McKanna, Tex.Civ.App., 207 S.W.2d 645, n. r. e.; Missouri Pacific Railroad Co. v. Kimbrell, Tex., 334 S.W.2d 283.

Since we are of the view that appellees are not entitled to the award of $1,500 as exemplary damages found by the jury, such view requires us to reform the judgment to that extent. Accordingly, the judgment of the trial court is reformed so that the amount recovered by appellees against appellant will be $2,700 with legal interest thereon at the rate of 6% per annum from date of the judgment, which is the 20th day of June, 1960. The judgment is reformed in part, and in part affirmed. All costs of appeal are taxed against appellees, and all costs below are taxed against appellant.