OKLAHOMA FIRE INS. CO. et al. v. ROSS.†
(No. 5325.)

(Court of Civil Appeals of Texas.   Austin.
Nov. 11, 1914.)

1. ACTION (§ 50*)—CAUSES OF ACTION—MIS-
JOINDER.
   Plaintiff and defendant B. were employed
by defendant insurance company as agents to
represent it in Texas, and, plaintiff having been
discharged, he sued the insurance company for
breach of the contract, alleging a discharge with-
out legal excuse before expiration of his con-
tract, and joined B. as a party defendant, al-
leging that B. conspired with the company to
aid and abet it in ousting plaintiff from his
employment. Held, that, while B. was a party
to the contract, he was so in the same sense that
plaintiff was, and rested under none of the
obligations that were imposed on the insurance
company; and hence there was a misjoinder of
causes of action.
   [Ed. Note.—For other cases, see Action, Cent.
Dig. §§ 511–547; Dec. Dig. § 50.*]

2. DAMAGES (§ 40*)—BREACH OF CONTRACT—
SPECULATIVE DAMAGES.
   Where a contract employing plaintiff to
act as agent for defendant insurance company
provided that he should receive $125 a month,
traveling expenses, and 2½ per cent. commission
on all premiums forwarded to and accepted by
the insurance company, plaintiff, on discharge
without sufficient cause before the end of his term,
was not barred from recovering profits he would
have made out of the commissions on premiums
had he been allowed to serve the remainder of
his term, on the ground that the amount of such
profits was to a considerable extent speculative.
   [Ed. Note.—For other cases, see Damages,
Cent. Dig. §§ 72–88; Dec. Dig. § 40.*]

3. APPEAL AND ERROR (§ 1040*)—RULINGS ON
PLEADINGS—CAUSES OF ACTION—MISJOIN-
DER.
   Where plaintiff sued for breach of con-
tract and pleaded certain slanderous charges
alleged to have been made by the officers of de-
fendant company at and subsequent to its breach
of the contract, but on exceptions for misjoinder
of causes of action, plaintiff's attorney claimed
that such allegations of slander were made to
show malice only, and the court did not submit
the issue of slander to the jury as a ground for
recovery, the overruling of the exceptions was
not ground for reversal of a judgment for plain-
tiff.
   [Ed. Note.—For other cases, see Appeal and
Error, Cent. Dig. §§ 4089–4105; Dec. Dig. §
1040.*]

4. DAMAGES (§ 89*)—BREACH OF CONTRACT—
EXEMPLARY DAMAGES.
   In general, exemplary damages are not
recoverable for breach of contract, unless the
breach occurs in such a manner as to constitute
a tort, but tortious conduct, however malicious
or inexcusable, committed after the breach, will
not justify such damages.
   [Ed. Note.—For other cases, see Damages,
Cent. Dig. § 203; Dec. Dig. § 89.*]

5. CONSPIRACY (§ 19*) — CONTRACT OF EM-
PLOYMENT—BREACH.
   Evidence held insufficient to establish a
conspiracy between an insurance company and
B. to terminate plaintiff's employment by the
insurance company, and to charge him with im-
proper conduct in the padding of his expense
account.
   [Ed. Note.—For other cases, see Conspiracy,
Cent. Dig. §§ 25, 26; Dec. Dig. § 19.*]

6. MASTER AND SERVANT (§ 41*)—CONTRACT—
BREACH—PUNITIVE DAMAGES.
   Where plaintiff was discharged by defend-
ant insurance company prior to the expiration of
his contract, but such discharge, accomplished
by the company's representative, was not ac-
companied by harsh or rude conduct, and,
though plaintiff was informed privately when
he demanded to know the reason that he was dis-
charged because he had been padding his ex-
pense accounts, such statement, made to him
privately in good faith, was not a slander, but
was privileged; and hence plaintiff could not
recover punitive damages against the company
in an action for breach of the contract.
   [Ed. Note.—For other cases, see Master and
Servant, Cent. Dig. §§ 12, 50–53; Dec. Dig. § 41.*]

Error to District Court, McLennan Coun-
ty; Tom L. McCullough, Judge.

Action by Harvey B. Ross against the Ok-
lahoma Fire Insurance Company and others.
Judgment for plaintiff, and defendants bring
error. Reversed and rendered as against de-
fendant J. W. Beasley, and modified and af-
firmed as against defendant insurance com-
pany.

Sleeper, Boynton & Kendall, of Waco, and
Burwell, Crockett & Johnson, of Oklahoma
City, Okl., for plaintiffs in error.  Witt &
Saunders, Scott & Ross, and E. J. Clark, all
of Waco, for defendant in error.

KEY, C. J.  Harvey B. Ross brought this
action against the Oklahoma Fire Insurance
Company and J. W. Beasley, and sought to
recover both actual and punitory damages
for the breach of a contract entered into by
Ross and Beasley, parties of the first part,
and the insurance company, party of the sec-
ond part.  The answers of the defendants
contained general and special exceptions,
general denials, and certain special pleas, the
particulars of which it is unnecessary to
state.  There was a jury trial, which result-
ed in a verdict and judgment for the plain-
tiff, Ross, against both of the defendants for
$6,667 actual, and $2,500 punitory, damages,
and the defendants have brought the case to
this court by means of a writ of error.

   While the defendants in the court below
are plaintiffs in error, and the plaintiff in
the court below is defendant in error, in
this court, in this opinion that unnecessary
and confusing transposition of the parties
will be disregarded, and the word "plaintiff"
will refer to Ross, who was the plaintiff in
the court below, and the word "defendants"
will refer to the insurance company and
Beasley, who were defendants in that court.

   After giving the case long and careful con-
sideration, we have reached the conclusion
that, as between the plaintiff and the de-
fendant Beasley the judgment should be re-
versed and here rendered for the latter; and,
as between the plaintiff and the insurance
company, the judgment for punitory damages
should be reversed and rendered for the in-
surance company, and the judgment for actu-

al damages as against that defendant should be affirmed.

[1] Dealing with the Beasley branch of the case first, we deem it proper to say that while the plaintiff charged in his petition that Beasley had entered into a conspiracy with the insurance company to oust the plaintiff from his employment as an agent of the insurance company, and had aided and abetted in accomplishing that result, there was an entire failure to prove the existence of any such conspiracy, or that Beasley aided or abetted in ousting the plaintiff from his employment, and therefore the court should have instructed a verdict for Beasley. By the terms of the contract hereinbefore referred to, Ross and Beasley were employed by the insurance company as agents to represent that company in the state of Texas, and Ross sued the insurance company for a breach of that contract, alleging, in substance, that, without legal excuse, the company had discharged him before the expiration of the contract. Now, while Beasley was a party to that contract, he was a party in the same sense that Ross was, and rested under none of the obligations that were imposed upon his codefendant, the insurance company; and therefore we think the trial court should have sustained the exceptions which presented the question of misjoinder of causes of action. However, as we have concluded to reverse and render the case in favor of Beasley, the action of the trial court in overruling the exceptions referred to is now immaterial, in so far as he is concerned.

[2] Turning to the other branch of the case as to the insurance company, conceding that the court should have sustained the exception referred to, we have reached the conclusion that the case ought not to be remanded for another trial upon the question of actual damages, because there is no reason to suppose that a retrial between the plaintiff and the insurance company, limited to the question of the breach of the contract and actual damages, would result in a more favorable finding for the insurance company than the verdict which has already been rendered for actual damages. True it is, the insurance company assails that finding and charges that it is unsupported by testimony, but we have reached a different conclusion. At the time of its breach the contract had about four years to run; by its terms the plaintiff was to receive a salary of $125 per month, his traveling expenses, and 2½ per cent. commission on all premiums forwarded to and accepted by the insurance company. It is also true that by agreement of the parties and the charge of the court, the question of the plaintiff's right to recover for salary was eliminated from the case, and the measure of damages thereby limited to the profits the plaintiff would have made out of the commissions on premiums. In the very nature of things, the amount of such profits is, to a considerable extent, speculative, but the authorities hold that that fact will not prevent a recovery. In this case it was shown that after the insurance company had discharged the plaintiff it ceased to do business in Texas on the ground that it was not profitable so to do. But there was testimony tending to show that Ross and Beasley were building up a business at the time the former was discharged; that it was largely through his efforts that the business referred to had been obtained, and we cannot say that the jury was not justified in reaching the conclusion that, if the plaintiff had not been discharged, the business would probably have been successful and attained such proportions as that during the remaining four years the plaintiff would have earned as commissions the amount awarded him as actual damages.

[3] It is also insisted by the insurance company that the case should be reversed because of a misjoinder of causes of action, in that the plaintiff sued for a breach of the contract and also for slander founded upon certain slanderous charges made against the plaintiff at and subsequent to the breach of the contract. Counsel for Ross contend that the plaintiff's petition did not seek a recovery for slander, and that the matters referred to were set up in the petition for the purpose of showing malice on the part of the defendant in discharging the plaintiff in the manner and under the circumstances alleged in the petition. The trial court seems to have adopted the latter view, and did not submit to the jury the question of slander, but did submit the questions of conspiracy between the two defendants, of breach of the contract and actual and punitory damages. Therefore if it be conceded (which we do not decide) that the plaintiff had no right to join in the one action against the insurance company the right to recover upon contract and also for slander, we do not think the case should be remanded for another trial because of the action of the court in overruling exceptions to the petition presenting that point. Inasmuch as the court held that no recovery was sought on the ground of slander, and did not submit that issue to the jury, it would seem that the result was the same as if the court had sustained the exceptions referred to.

It is also contended that error was committed in permitting the plaintiff to introduce testimony tending to sustain the slanderous charges referred to, which consisted, in substance, of the charge that the plaintiff had fraudulently padded his expense accounts and had thereby committed a fraud upon the insurance company, for which reason he had been discharged. If it be conceded that the testimony referred to was not admissible, we see no reason to suppose that it had any influence with the jury in determining whether or not the insurance company had breached the contract, and the amount of actual

damages the plaintiff was entitled to recover for such breach. Doubtless that testimony was considered by the jury and spent its full force in determining the question and of the amount of punitory damages; but, as we have concluded to reverse and render upon that issue, we hold that the insurance company is entitled to no further relief because of the admission of that testimony.

[4] In conclusion, we deem it proper to make a few observations concerning our rulings upon the question of punitory damages, and the failure to make a case against Beasley. It is well settled, as a general rule, that punitory or exemplary damages are not recoverable for the breach of contract. There are some exceptions to that rule where the breach occurs in such manner as to constitute a tort; but tortious conduct committed after the breach of the contract, no matter how malicious or inexcusable, will not form the basis for recovery of punitory damages for a breach of contract. Aside from the testimony given by the plaintiff, it is not pretended that he had any case against either defendant. According to his testimony, which the jury had the right to and did accept as true, he was not guilty of the fraudulent conduct charged against him, and therefore his discharge was wrongful, and he was entitled to recover from the insurance company actual damages therefor. But his counsel contend that he was not only entitled to recover actual damages against the insurance company, but was also entitled to both actual and punitory damages against both Beasley and the company. The claim against Beasley rests upon the contention that he entered into a conspiracy with the insurance company for the purpose of ousting Ross from his employment; while the claim for punitory damages rests upon the conspiracy theory, and also upon the contention that the manner in which the plaintiff · was discharged from his employment constituted a tort, entitling him to recover punitory as well as actual damages.

[5] In support of those contentions, counsel for Ross have embodied in their brief the following statement of his testimony bearing upon the two issues referred to:

"It was in January or February that he first began discussing with the representatives of the Oklahoma Fire Insurance Company the advisability of coming to Texas. Shortly thereafter defendant in error J. W. Beasley executed a contract with the said company, by virtue of which they became general and special agents for the state of Texas. At the time of the making of the contract, defendant in error was acting as secretary for the company, which position he resigned on moving to Texas. The representatives of the company wanted defendant in error to introduce the business in Texas on account of his family standing. The president, Robert Galbreath, knew all about defendant in error's connections in this state and the position which his family had occupied in years past. Before establishing a general agency defendant in error came to Texas and called upon the Commissioner of Insurance and Banking, in order to ascertain the legal requirements for the admission of his company. This trip was taken at the request of the president of the company. The contract in issue was executed on the 28th day of April, 1910, and immediately thereafter defendant in error and the said J. W. Beasley came to Texas and established themselves at Dallas. Defendant in error applied himself to the establishment of the business of the said company, and traveled over the state, appointing agents, establishing, in all, between 120 and 140 agencies himself out of a total number of 160, representing the combined efforts of both Ross and Beasley during the period intervening between the execution of the contract and the date of the breach. The contract was breached by the said Oklahoma Fire Insurance Company on the 28th day of February, 1911, 10 months after its execution. The life ‘of the contract was for a period of five years from the 1st day of May, 1910, to the 1st day of May 1915, inclusive. In consideration .of the services of the defendant in error and the said J. W. Beasley, as special and general agents and adjusters, it was stipulated in the contract that they were to receive a salary of $125 each per month and a further consideration of 5 per cent. commission on all premiums forwarded to the home office of the said Oklahoma Fire Insurance Company and accepted by it. Defendant in error and the said J. W. Beasley were to receive all necessary hotel bills, traveling and other incidental expenses, while engaged in the prosecution of such business, including a reasonable amount for office rent for the period of the contract. In making up his expense accounts for numerous trips he was obliged to make in appointing agencies and in the prosecution of the business, defendant in error prorated his incidental expenses under general heads, such as hotel, sleeper, and railroad items. Robert Galbreath, president of the company, was fully advised as to this practice and never objected to it. During the 10 months period of his active employment his traveling expenses, inclusive of incidentals for the 10 months, were only $913.60, during which time he had traveled 13,-650 miles in all. In the following October, 1910, the president of the company visited defendant in error at Dallas, and expressed gratification with the manner in which the business was being conducted. 'He expressed himself in the presence of the bookkeeper and in the presence of Mr. Phipps as being highly gratified with the business in every way. * * * The first time I ever had any intimation from Mr. Galbreath, or any other person connected with the concern, that my management and conduct of the business was not satisfactory, was on Sunday, February 28th, about 1:30 or 2 o'clock in the afternoon. * * * J. L. Gessler informed me of the fact. He was general manager of the company. Previous to that time I had made out my expense accounts in the manner in which I have described, and made out one in the presence of Mr. Galbreath. That took place about the 1st of February. That took place in Oklahoma City in the home office. I gave the expense account that I made out at that time to Mr. Galbreath. He was president of the company. He handed it to the secretary of the company, and he gave me a check in payment of that expense account. '* * * Mr. Galbreath did not say a word to me at that time about being dissatisfied in any manner with the manner in which I had made out the report of my expense account. * * * I had a talk with Mr. Galbreath, in which I explained to him how I classified my expense items. I talked with him right at the time about coming to Texas. We had up a discussion of the incidentals in the contract. I told him I would include all those incidentals in hotel items, and he thought so, too; that it would not look good putting down cigars and drinks and different things like that in the expense account.' In the early part of February, 1911, a short time be-

fore this contract was breached, defendant in error received a letter from General Manager J. L. Gessler, in which he objected to the amount of commissions that they were paying under the provisions of the contract, stating that it would be up to them, Beasley and Ross, to make the move, and that unless they modified the contract the Oklahoma Fire Insurance Company would have to go out of business, etc. 'Immediately upon receipt of that letter Mr. Beasley and I discussed it. We both declined to do so. Beasley said he would go to Oklahoma City and have Gessler fired for writing such a letter.' (Previous to receiving the telegram from Mr. Gessler arranging the appointment at which the contract was breached, a phone call came from Oklahoma City.) 'They had called several times that day, and called for Beasley and would not talk to me. I answered the phone and the long-distance girl told me that they wanted Beasley. The call was from Gessler in Oklahoma City. That was Saturday morning when that occurred. * * * I know of my own knowledge that Beasley answered that call. He did not say anything to me after the conversation over the phone. I only heard just a word or two of the phone call. * * * I could understand Beasley talking to Gessler over the phone. I only came in just when the tail end of the conversation was going on. I recall what it was that I did hear. Beasley said: "He is going to leave; you had better do it now." That is all I heard. It was one hour or so after that when I received the telegram. After that conversation I received a telegram from Gessler. He was then in Oklahoma City. * * * I did not go to South Texas.' On meeting Gessler at Dallas the following Sunday defendant in error was notified that he, Gessler, had come there for the purpose of firing him, and when asked for what, Gessler answered, 'Well, for padding your expense accounts.' I says, 'I guess you are joking,' and he says, 'No; I am in earnest.' I says: 'Well, Gessler, if you are in earnest this is a serious proposition. Will you tell me in what particular I have padded my expense account? You know, and the balance know, how I made my expense accounts, and I never had any criticism from any of you. I have kept them all, and I will be willing to explain to anybody else what is necessary about it.' * * * Gessler said: 'There is no use of your getting your expense accounts, for I have been sent down here for the purpose of firing you. There is nothing that you can say or do that would change the situation; that is my mission; sent here by Robert Galbreath to fire you.' I said: 'I would like for Mr. Galbreath to give me an opportunity; I want a chance to explain these things. This is indeed a serious matter to me.' He said: 'Well, I am sorry, but I haven't anything else to do but to fire you; you have missed your opportunity.' I told him they owed me some money. He said, 'They sent one dollar for you to sign this release.' (See release submitted to defendant in error, but which he refused to sign.) 'He reached in his pocket and pulled out a silver dollar, and said: "That is all you will get. I told Galbreath he should pay you at least your salary." Gessler advised me to sign the release. He said: "You know Galbreath is a rich man, and if you do not sign this paper he will scatter broadcast over the country the fact that you have padded your expense accounts, and, whether true or not, it does not make any difference, he will ruin you in a business way, and he will never let you get on the road anymore." ' J. W. Beasley remained in charge of the business. Both defendant in error and J. W. Beasley occupied the same desk and divided the pigeon holes or receptacles equally between them. The letter received from Mr. Gessler, with other letters of a personal nature, were in Ross' side of the desk. When Ross opened his desk to produce his expense accounts and show them to Gessler, his half of the desk

was blank with the exception of one place, a locker where his expense accounts were kept and which was locked by a different key, the key being kept by Ross. There were two keys to the desk. Ross had one and Beasley the other. Beasley was in the office a while that Sunday morning Ross was fired, and left there before Gessler came in. Ross was on the eve of departure for Corpus Christi to adjust a loss at the time he was advised by Gessler of his discharge. J. W. Beasley, plaintiff in error and Robert Galbreath, president of the Oklahoma Fire Insurance Company, were closely and intimately connected in a business way, and had been for some time prior to Mr. Beasley's coming to Texas; Mr. Beasley having been elected general manager. After his discharge defendant in error applied to numerous fire insurance agencies, both general and special, and for some inexplicable reason failed to get employment."

This testimony falls far short of showing the existence of a conspiracy, and therefore we hold that Beasley is not liable. It may cause a suspicion, but it does not justify a finding that any agreement had ever been entered into between the insurance company and Beasley for the purpose of ousting the plaintiff; and it follows that as the proof fails to show the existence of the conspiracy, punitory damages are not recoverable upon that theory.

[6] Then the remaining question is, Was such a tort committed by the insurance company at the time it discharged plaintiff as to justify a recovery of punitory damages? and in our opinion the law gives a negative answer to that question. It does not appear that Gessler, who acted for the insurance company in discharging the plaintiff, acted harshly or was guilty of any other rude conduct. He expressed sympathy for Ross, and did not make the charge of fraudulent conduct against him until Ross demanded to know the reason for his discharge. Gessler replied that he was discharged because he had been padding his expense accounts; and, in addition thereto, offered the plaintiff a dollar if he would sign an instrument releasing the company from the contract, advised him to sign it, and told him that if he did not do so Galbreath, the president of the company, would make the charge referred to public and injure the plaintiff in a business way. The entire transaction, and all that was said on that occasion, was private matter between Gessler and the plaintiff; and, conceding that it constituted a false charge against him of fraudulent and dishonest conduct, still, in contemplation of law, it was not even a slander, because it was not published or uttered in the hearing of any third person, and therefore it could not have damaged the plaintiff's reputation or good name; and, if made in good faith, it was privileged because it was in response to Ross' question. It may be true, as the testimony tends to show, that at different times and on other occasions after the plaintiff had been discharged and the contract breached, the insurance company caused the charge referred to to be repeated in the presence of others, and under such cir-

cumstances as to create a cause of action for slander; but the plaintiff's counsel say that his petition did not seek to recover for slander, and that issue was not submitted to the jury; and the fact that the proof may have shown a cause of action for slander afforded no ground for a recovery of punitory damages for a breach of the contract, when the slander referred to was no part of and not connected with the breach of the contract. Hence we conclude that the plaintiff was not entitled to recover anything as punitory damages, and the court should have so instructed the jury.

All the questions presented have been duly considered, and, as heretofore stated, our conclusion is that the judgment for actual damages should be affirmed as against the insurance company, and that in all other respects the judgment should be reversed and here rendered for both the insurance company and Beasley.

Some objections are urged to the court's charge, but those which relate to the question of actual damages are not regarded as tenable, and the others, except those which our decision sustains, are rendered immaterial by the judgment rendered by this court.

Affirmed in part and in part reversed and rendered.