**DELHI PIPELINE CORPORATION, Appellant,**

v.

**LEWIS, INC., Appellee.**

**No. 138.**

Court of Civil Appeals of Texas.

Corpus Christi.

April 28, 1966.

First Rehearing Denied Oct. 20, 1966.

Second Rehearing Denied Nov. 17, 1966.

**296**

Geary, Brice & Lewis, Dallas, James P. Ryan, of Fischer Wood, Burney & Nesbitt, Corpus Christi, for appellant.

Homer E. Dean, Jr., of Lloyd, Lloyd, Dean & Ellzey, Alice, Toufic Nicolas, of Horkin, Nicolas & Nicolas, Corpus Christi, for appellee.

## OPINION

SHARPE, Justice.

This appeal is from a judgment rendered in a jury trial for Lewis, Inc., appellee, plaintiff below, in the sum of $31,303.07, against Delhi Pipeline Corporation, defendant below. The parties will sometimes be referred to as "Lewis" and "Delhi".

Lewis sued for damages in the amount of $25,914.76 for alleged breach of oral and written contracts, the latter having been executed on October 3, 1963, and the former having been entered into shortly thereafter, all covering pipeline projects in Victoria County, Texas; for $50,000.00 as exemplary damages and $8,000.00 for attorney's fees. By way of cross-action, Delhi sued for $4,932.45 due to alleged breach of contract by Lewis. Lewis is in the business of constructing pipeline systems and Delhi is a gas transmission company. It is undisputed that Lewis was an independent contractor and that Delhi terminated the contracts before completion of the work by Lewis.

The jury verdict established the amount of Lewis' damages as follows: $17,451.00 for expenses incurred prior to termination of the contracts; $7,500.00 for loss of profit; $5,000.00 for attorney's fees; and $15,000.00 for exemplary damages. The trial court granted Delhi's motion for judgment non obstante veredicto and to disregard the jury findings concerning exemplary damages only and denied Lewis a recovery in such respect. The judgment allowed interest on the amount of $24,951.50 from October 17, 1963 to its date of entry on September 12, 1964.

Appellant Delhi urges 37 points of error which are briefed in six groups. Appellee Lewis urges 7 reply points, similarly briefed, and one counterpoint concerning the refusal of the trial court to award exemplary damages. The points will be discussed as grouped for briefing by the parties.

Under the first group of points (1–6), relating primarily to Special Issue 1, Delhi contends that the trial court should not have rendered judgment based upon such jury finding; that there is no evidence and it is factually insufficient to raise such issue and support the answer thereto; that the trial court should have granted judgment non obstante veredicto on the entire case pursuant to Delhi's motion; and, in any event, should have granted a new trial.

Special Issue 1, its accompanying definition and the jury answer are as follows:

"*Special Issue No. 1.*

"Do you find from a preponderance of the evidence that under all the circumstances which existed on or prior to October 17, 1963, Plaintiff Lewis, Inc., was proceeding with due diligence on his contracts with Defendant Delhi Pipeline Corporation to install the pipelines in question?

Answer 'yes' or 'no'.

Answer: Yes.

"By the term 'due diligence' as used herein is meant such diligence as would be required for Plaintiff to complete the contracts in accordance with the terms and provisions of the contracts between Plaintiff and Defendant and the plans and specifications."

Delhi's argument under its first group of points is that Lewis had agreed to perform the work in a manner satisfactory to Delhi's representative, Mr. C. P. Butler, and this was the real issue; that Lewis' work was not satisfactory to Butler, and his dissatisfaction was conclusive on the question of performance and breach; that the question submitted by special issue 1 was immaterial; that Lewis' failure to plead, prove and secure a jury finding of bad faith on the part of Delhi's representative is fatal to Lewis' recovery; that, in any event, there is no evidence and it is factually insufficient to raise and support the jury finding on special issue 1 that Lewis was proceeding with due diligence. Lewis contends that the trial court correctly submitted the ultimate and controlling issue of diligent compliance with the contracts and that the jury answer is amply supported by evidence. We agree with Lewis.

■ Delhi relies upon the rule that a contract may require that one party's per-

formance shall be to the satisfaction of the other party or, in some instances, to that of a designated third party such as an architect or engineer. See Atlas Torpedo Co. v. United States Torpedo Co., 15 S.W.2d 150 (Tex.Civ.App.1929, n. w. h.); Dixie Oil Co. v. McBurnett, 6 S.W.2d 83 (Tex. Com.App.1928, Judg.App.); Griffith v. Thomson, 244 S.W.2d 722 (Tex.Civ.App. 1951, n. w. h.); Golden State Mutual Life Insurance Co. v. Kelley, 380 S.W.2d 139 (Tex.Civ.App.1964, wr. ref., n. r. e.); Goodrum v. State, 158 S.W.2d 81 (Tex.Civ. App.1942, wr. ref., w. m.); City of San Antonio v. McKenzie Const. Co., 136 Tex. 315, 150 S.W.2d 989 (1941); Coppinger v. Republic Natural Gas Co. (10 Cir. 1948), 171 F.2d 4; Thompson-Starrett Co. v. La Belle Iron Works, (2 Cir. 1927), 17 F.2d 536. But that rule is operative only where it appears from express terms of the contract or from plain language therein that it was the intention of the parties that the determination of the person to whom the decision is entrusted would be final and conclusive; and such a provision is not to be implied. Black v. Acers, 178 S.W.2d 152 (Tex.Civ.App.1944, wr. ref.); Eckert-Fair Construction Company v. Flabiano, 342 S.W.2d 629 (Tex.Civ.App.1960, wr. ref., n. r. e.).

The sole provision concerning termination is found in the written contracts as follows:

"Contractor agrees to commence said work within —— days from the date of this contract and to complete said work with due diligence and, in the event Contractor fails to commence said work within the time above specified or, having begun said work, abandons it or for any reason suspends or refuses to continue it for a period of five days (unless Contractor is prevented from continuing by reasons beyond his control), Company shall have the right to take over said work and complete it at Contractor's expense."

■ The provisions as to satisfaction of the representative of Delhi in certain particulars are contained only in the specifications which were incorporated by reference into the contracts. We agree with appellant that in such case we must consider the agreements made by the parties in the specifications along with those contained in the job contracts. Tower Contracting Co., Inc. v. Flores, 157 Tex. 297, 302 S.W.2d 396 (1957); 17A C.J.S. Contracts § 299, pp. 136–137. However, there is no provision in the specifications or the job contracts that the determination of dissatisfaction by Delhi's representative would be final, binding or conclusive; neither is there a provision that such dissatisfaction would furnish a basis for Delhi to terminate the contracts. None of the provisions for termination by Delhi is shown to·exist.

■ The trial court correctly submitted the controlling issue, as hereinabove set out, and the jury found upon factually sufficient evidence that Lewis was proceeding with due diligence on his contracts with Delhi to install the pipelines in question on and prior to October 17, 1963, the date upon which Delhi refused to allow Lewis to proceed with the work and terminated the contracts. On the record here, an issue of bad faith on the part of Delhi's representative was not required. Delhi's first group of points (1–6) is overruled.

Under Delhi's second group of points (7–19) relating primarily to special issues 2 and 3, the contentions are made that there is no evidence and that the evidence is factually insufficient to raise such issues and to support the answers thereto; that the court erred in awarding Lewis a judgment for all expenses (under issue 2) and for profit (under issue 3), part of which was under the oral contracts, on which no right of recovery was established; that neither issues 2 or 3 represent the proper measure of damages; and that the amounts found were excessive. Special is-

sues 2 and 3, together with the jury answers thereto, read as follows:

### "SPECIAL ISSUE NO. 2.

"What amount of money do you find from a preponderance of the evidence would cover the reasonable and necessary expenses incurred by Lewis, Inc. in performance of the contracts in question before the termination of the contracts by Defendant Delhi Pipeline Corporation?

Answer in dollars and cents.

Answer: $17,451.00"

### "SPECIAL ISSUE NO. 3.

"From a preponderance of the evidence what do you find would have been the amount of profit, if any, which Plaintiff Lewis, Inc., would have reasonably expected to derive if it had been permitted to perform its contracts with Defendant Delhi Pipeline Corporation to completion?

"In this connection, you are instructed that loss in profits is measured by the difference between the contract price and what it would have cost the contractor to carry out the contract in accordance with its provisions and the plans and specifications.

Answer in dollars and cents.

Answer: $7,500.00."

The applicable rules may be stated as follows:

"Where the contractor is prevented by the owner from doing any work under the contract, or from completing the work after partial performance, or where he is justified in abandoning further performance because of a breach by the owner, he may recover, in addition to compensation for the work already done, any damages that he may have sustained by reason of the owner's breach of the contract, including the

profits that he would have made had he been permitted to perform, expense incurred in the performance of the contract up to the time of the breach, less any materials purchased by reason of the contract but not used, and damages sustained by his being compelled to sell at a loss material prepared for use under the contract." 10 Tex.Jur.2d, Building Contracts, § 62, pp. 71–72.

\* \* \* \* \* \*

"Loss of profits that he would have derived had he been permitted to perform may be recovered by the contractor where he has been prevented by the owner from completing the contract, or where he has justifiably abandoned further performance because of a breach by the owner, if this element of damages can be proved with reasonable certainty and was shown to be within the contemplation of the parties." 10 Tex.Jur.2d, Building Contracts, § 63, p. 74.

The above-stated rules find support in the cases of Austin Stone Industries v. Capitol Powder Company, 290 S.W.2d 689 (Tex.Civ.App.1956, wr. ref., n. r. e.); Texas Associates v. Joe Bland Const. Co., 222 S.W.2d 413 (Tex.Civ.App.1949, wr. ref., n. r. e.); Sullivan v. Dubis, 271 S.W. 2d 316 (Tex.Civ.App.1954, wr. ref., n. r. e.); Kleiner v. Eubank, 358 S.W.2d 902 (Tex.Civ.App.1962, wr. ref., n. r. e.); Osage Oil and Refining Co. v. Lee Farm Oil Co., 230 S.W. 518 (Tex.Civ.App.1921, wr. ref.).

■ The trial court correctly submitted the ultimate issues concerning the damages suffered by Lewis. Wichita Falls & Oklahoma Ry. Co. v. Pepper, 134 Tex. 360, 135 S.W.2d 79 (1940). The evidence was factually sufficient to support the findings on special issues 2 and 3. Delhi's second group of points (7–19) is overruled.

Under its third group of points (20–30) Delhi asserts eleven contentions relating to rulings of the trial court on the pleadings, evidence and argument of counsel in connection with the subject of exemplary

damages, all included under one statement and argument. Lewis, by its fourth reply point and counterpoint one contends that exemplary damages were properly plead and proved and that the trial court should have granted judgment for same.

Special issues 4 and 5 and the answers thereto read as follows:

### "SPECIAL ISSUE NO. 4.

"Do you find from a preponderance of the evidence that the Plaintiff Lewis, Inc., is entitled to exemplary damages against the Defendant Delhi Pipeline Corporation?

Answer 'yes' or 'no'.

Answer Yes.

"You are instructed that before you can assess exemplary damages, you must believe and find from a preponderance of the evidence that Defendant Delhi Pipeline Corporation acted wilfully, maliciously and with utter disregard for the rights of the Plaintiff Lewis, Inc.

"In this connection you are also instructed that punitive damages may be assessed as punishment for a wrongful act done, if the facts warrant the same. In awarding such damages, if any, you may consider the sense of wrong and insult to the Plaintiff Lewis, Inc., and the damage to his reputation, if any as a result of the wrongful acts, if any, of the Defendant Delhi Pipeline Corporation. The amount to be fixed, if any, is in the sound discretion of the jury.

"If you have answered Special Issue No. 4, 'Yes', then answer Special Issue No. 5; otherwise, do not answer same."

### "SPECIAL ISSUE NO. 5.

"What amount of money, if any, if paid now in cash, would compensate Plaintiff Lewis, Inc., for its exemplary damages, if any.

Answer in dollars and cents, if any.

Answer $15,000.00"

Lewis filed motion for judgment in the total amount of $46,199.10, which included $15,000.00 for exemplary damages. Delhi filed motion for judgment non obstante veredicto and to disregard certain special issue findings, including those on special issues 4 and 5. The trial court granted Lewis' motion only to the extent of the amounts found by the jury in answer to special issues 2, 3 and 6, aggregating $29,951.00, plus interest, and granted Delhi's motion for judgment non obstante veredicto and to disregard the jury answers to special issues 4 and 5, the effect of which was to deny Lewis a recovery for exemplary damages in the amount of $15,000.00.

■ We agree with the trial court and appellant on the points here involved. The rule in this State is that exemplary damages cannot be recovered for a simple breach of contract, where the breach is not accompanied by a tort, even though the breach is brought about capriciously and with malice. A. L. Carter Lumber Co. v. Saide, 140 Tex. 523, 168 S.W.2d 629 (1943); Houston & T. C. R. R. Co. v. Shirley, 54 Tex. 125 (1880); Hooks v. Fitzenrieter, 76 Tex. 277, 13 S.W. 230 (1890). The rules applicable to recovery of exemplary damages against a corporation are aptly stated in the case of Chronister Lumber Co. v. Williams, 116 Tex. 207, 288 S.W. 402 (1926), as follows:

" 'It is now the settled law of this state, that, to make a corporation liable for exemplary damages, the "fraud, malice, gross negligence, or oppression" which must authorize and justify the same, must have been committed by the corporation itself, or by some superior officer representing it in its corporate capacity; or, if committed by a subordinate servant or agent, the act must have been either previously authorized, or subsequently ratified or approved by the company or such

superior officer, after knowledge of the facts.' "

In King v. McGuff, 149 Tex. 432, 234 S.W.2d 403, 405 (1950), the Court also said:

"While the bulk of our decisions on this subject of the master's liability in exemplary damages for the gross negligence of the servant are those involving corporate masters and large enterprises, and indeed the only authority cited below, Chronister Lumber Co. v. Williams, 116 Tex. 207, 288 S.W. 402, opinion adopted by this court, is just such a case, the general rule prevailing in Texas may, for the purposes of this suit, be stated the same as in the Restatement, Torts, § 909, as follows:

'Punitive damages can properly be awarded against a master or other principal because of an act by an agent if, but only if,

'(a) the principal authorized the doing and the manner of the act, or

'(b) the agent was unfit and the principal was reckless in employing him, or

'(c) the agent was employed in a managerial capacity and was acting in the scope of employment, or

'(d) the employer or a manager of the employer ratified or approved the act.'

"See Ft. Worth Elevators Co. v. Russell, 123 Tex. 128, 70 S.W.2d 397; Morton Salt Co. v. Wells, 123 Tex. 151, 70 S.W. 2d 409; Southwestern Gas & Electric Co. v. Stanley, 123 Tex. 157, 70 S.W.2d 413. Our decisions on the analogous subject of charging a master or principal with exemplary damages for the malicious misconduct of a servant or agent involve both individual and corporate defendants and follow the same general principles applied in cases of gross negligence. See Commonwealth of Massachusetts v. Davis, 140 Tex. 398, 168 S.W.2d 216, and cases cited at page 225 of the latter report."

■ Although Lewis' pleadings were sufficient in the absence of special exceptions to allege a cause of action for exemplary damages, the jury findings on special issues 4 and 5 would not authorize judgment in such respect for Lewis in the absence of other essential findings. Lewis did not request submission of issues concerning tortuous acts on the part of officers representing the corporation in its corporate capacity nor by lesser representatives of Delhi; nor as to whether the conduct of the latter had been authorized or ratified by the corporation. Counsel for Delhi ● clearly pointed out the absence of such findings in its motions filed after verdict and the trial court correctly sustained Delhi's motion for judgment non obstante veredicto. There is no jury finding in this case which would establish liability against the Delhi Corporation within the Rules announced in the authorities above cited; neither does the evidence conclusively establish such liability.

Affirmance of the judgment denying exemplary damages to Lewis removes that question from the case, and our remaining consideration is to determine if errors were committed by the trial court which affected the remainder of the verdict or the judgment. We do not believe that such error is reflected by appellant's third group of points (20–30), and, in any event the errors, if any, would be harmless under Rule 434, Texas Rules of Civil Procedure. Appellant's third group of points (20–30) and appellee's counterpoint one are overruled.

■ Under appellant's fourth group of points (31–33), relating to special issue 6, the contentions are made that there is no evidence and that the evidence is factually insufficient to raise and support an award of $5,000.00 for Lewis' attorney's fees; that such amount is excessive; and that attorney's fees cannot be recovered under Art. 2226, Vernon's Ann.Civ.St., where the suit is for breach of contract.

We hold that Lewis' claim for recovery of attorney's fees falls within the provisions

of Art. 2226, V.A.C.S. The jury finding on special issue 2 establishes reasonable and necessary expenses by Lewis in performance of the contracts amounting to $17,451.50, of which $9,471.58 was expended for labor. Delhi's superintendent-inspector testified that labor was the larger part of the expense of such project. Contracts for labor done and materials clearly are within the provisions of Art. 2226, V.A.C.S., and a corporation may recover reasonable attorney's fees in connection with those items. Ginther v. Southwest Workover Company, 286 S.W.2d 291, 295 (Tex.Civ. App., 1956, n. w. h.); Nolen v. Rig-Time, Inc., 392 S.W.2d 754 (Tex.Civ.App., 1965, wr.ref., n. r. e.); Wyche v. Wichita Engineering Company, 374 S.W.2d 728 (Tex. Civ.App., 1964, n. w. h.); and see United States of America for the use and benefit of Caldwell Foundry and Machine Company, Inc., v. Texas Construction Company, 237 F.2d 705 (5 Cir. 1955); Lone Star Producing Company v. Gulf Oil Corporation, 208 F.Supp. 85, 93 (U.S.D.C., Eastern Dist.Tex.1962).

Delhi relies upon Van Zandt v. Fort Worth Press, 359 S.W.2d 893 Tex. (1962), which involved suit by a newspaper corporation for classified and display advertising. The Supreme Court held that the claim was neither upon a sworn account nor for personal services rendered, and that attorney's fees were not recoverable under Art. 2226, V.A.C.S. However, the Court also made statements favorable to Lewis' position herein, in part, as follows:

"In quoting from Levitt v. Faber [20 Cal. App.2d Supp. 758, 64 P.2d 498] we are not to be understood as holding that services will lose their character as personal services within the meaning of Art. 2226 because in the performance of the services the claimant uses the material, implements, tools or equipment essential to the service. To perform personal services the lawyer must use his books, the doctor his diagnostic or surgical instruments, the carpenter his tools. We would thus agree with the Supreme Court of

New Hampshire which held in Hale v. Brown, 59 N.H. 551, 558, that 'the personal services of the lumberman include the use and earnings of his oxen, chain, canthook, and his own team and sled, if these are actually used by him and are essential to the service rendered'."

The trial in this case lasted for a week before the jury. The statement of facts contains 594 pages and numerous exhibits. It reflects the taking of numerous depositions which were referred to or used, consultations by Lewis' attorneys with him and the officials of Delhi, and other preparations for the trial. Opinion evidence was offered by an experienced trial attorney that a reasonable attorney's fee would be $8,000.00. There was evidence to support the award of $5,000.00 as attorney's fees and it is not so against the great weight and preponderance of the evidence as to be manifestly wrong or unjust; neither is it excessive. Delhi's fourth group of points (31–33) is overruled.

Delhi's fifth group of points (34–36), relates to special issue 7, reading as follows:

### "SPECIAL ISSUE NO. 7.

"What do you find from a preponderance of the evidence to be the reasonable and necessary costs, if any, to Defendant Delhi Pipeline Corporation to complete the contracts with Plaintiff Lewis, Inc., to install the pipelines in question?

Answer in dollars and cents.

Answer $ none"

Delhi contends that there is no evidence to support such issue; that the uncontradicted evidence showed that the necessary and reasonable cost to Delhi of completing the work under the written contract was $61,932.45; that the trial court should have set aside the answer to such issue and entered judgment for Delhi upon its counter claim, in the amount of $4,932.45, representing the difference between the contract price and the amount paid by Delhi

to complete the work; that the said answer was so excessive as to demonstrate prejudice, bias or sympathy on the part of the jury and a new trial should have been granted. The last-mentioned contention is not briefed.

■ The finding of the jury on special issue 7 was immaterial in view of the jury findings on special issues 1 through 6, which established Lewis' right of recovery and for attorney's fees. Issue 7 was submitted in connection with Delhi's cross-action upon which liability was not established against Lewis. Since no right or recovery in favor of Delhi was established, the amounts expended by it to complete the contract would be immaterial and eliminated from consideration. Southern Pine Lumber Co. v. Andrade, 132 Tex. 372, 124 S.W.2d 334 (1939). As the issue was framed and argued, it could be understood to inquire concerning the "reasonable and necessary costs, if any" of completing the contract over and above the amount of Lewis' contract for a turnkey job, and, under that view, could properly have been answered "none". Delhi's fifth group of points (34–36) is overruled.

■ Delhi's point 37 asserts that "In view of the cumulative effect of the many errors committed by the trial court, Appellant was deprived of its right to a fair trial, and the trial court erred in not granting a new trial for this reason." The statement under the point reads as follows: "No statement need be given as an introduction to this Point because the same is based upon the numerous errors committed during the course of the trial, including the argument to the jury." There is no reference to any specific jury argument or alleged error, and the point is not sufficiently briefed to require consideration. Saldana v. Garcia, 155 Tex. 242, 285 S.W.2d 197 (1956). Nevertheless, under the instant point we have considered each of Delhi's remaining points of error and argument made thereunder and we have held that

error or reversible error has not been established by them. If errors were committed by the trial court, they were harmless, and their cumulative effect would not present reversible error so as to authorize a new trial. Rule 434, T.R.C.P. Delhi's point 37 is overruled.

The judgment of the trial court is affirmed.

NYE, Justice (concurring).

Appellee sued for $50,000.00 as damages for willful and malicious conduct on the part of the appellant which was alleged to have damaged appellee's reputation. The jury awarded $15,000.00 as exemplary damages. The trial court excluded this amount from the final judgment.

Appellant in his points 20 through 30, all relating to the exemplary damage issues, contends in effect that the trial court erred: in admitting into evidence a certain exhibit offered by the plaintiff and certain evidence relative to punitive damages; in overruling appellant's objections and request for instructions to disregard, when appellee argued to the jury concerning this certain plaintiff's exhibit; in overruling objections to certain testimony outside of the pleadings; in submitting special issues 4 and 5; and in permitting appellee to make certain arguments to the jury relative to punitive damages. Appellee by counterpoint contends that the damages should be reinstated, and added to the judgment.

Appellee sought damages for libel and slander, pleading that such sum represented actual damages to his reputation. Nowhere in the pleadings did appellee seek "punitive damages" nor was the term "exemplary damages" used in the petition. The original petition seeking such damages was excepted to and the exceptions were sustained by the trial court. Appellee's amended petition then set forth certain libelous or slanderous statements or writings, contending that the contractor was damaged. This paragraph

in the amended petition relating to such damages reads as follows:

## VI.

"In addition thereto, Contractor would show that the Owner acted willfully, maliciously and with utter and complete disregard for the rights of Contractor; has called other owners and operators of pipe lines throughout South Texas and advised them it was terminating Contractor's contracts and made false allegations with reference to Contractor's ability to erect and construct pipe lines, as hereinafter alleged, which willful and malicious conduct on Owner's part has damaged Contractor's reputation as a pipe line contractor in the amount of $50,000.-00, which sum Owner is obligated to pay Contractor. On or about October 16 and 17, 1963, Owner's duly authorized agent, Tommie E. Lohman, in the course of his employment called Mr. Coyle of Sun Oil Co. and Mr. Bell of Mobil Oil Co. and told them in substance that contractor, Lewis was not capable of laying larger oil field pipe lines, didn't know what he was doing, didn't have proper equipment and that Owner Delhi was firing him off their job; on or about the same dates, Owner Delhi's duly authorized agents, Butler and Quinn, told Tom Kelso, Andrew Quillan and Harry Ebers in substance, 'Lewis doesn't know what he's doing. Let's go ahead and break the s. o. b.' "

The principle of law involved is correctly stated in McDonough v. Zamora, Tex.Civ. App., 338 S.W.2d 507, ref., n. r. e., by Justice Pope. See collection of cases cited therein.

"Punitive damages are not recoverable in actions for breach of ordinary commercial contracts, though the breach is brought about capriciously and with malice."

The allegations in plaintiff's petition which would entitle him to exemplary damages would have to be confined to tort, independently of any right to recover damages by reason of the breach of the contract. As stated in the opinion: (McDonough v. Zamora, supra)

"In other words, one may not be limited to a contract measure of damages if he actually pleads and proves a tort which is in addition to or coincident with a contract breach. It has been said that punitive damages are permitted when a breach is accompanied by 'willful acts of violence, malicious or oppressive conduct.' "

The intentional breach of a contract is not punishable by punitive damages. A. L. Carter Lumber Co. v. Saide, 140 Tex. 523, 168 S.W.2d 629. The cases which apply the correct rule are those in which punitive damages have been allowed *if and only if* a distinct tort is alleged and proved independent but coincident to the contract action. The reason why the trial court was authorized to disregard the jury findings as to the exemplary damages was because the plaintiff did not plead, or request, or submit a special issue concerning the tortuous conduct of the defendant or his agents. This cannot be the basis for recovery through the instruction as submitted by the trial court to the jury, i. e., "Punitive damages may be assessed as punishment for wrongful acts done, if the facts warrant the same." There were no facts proved or found by the jury authorizing exemplary or punitive damages.

The trial court was further in error in instructing the jury that: "In awarding such damages, (punitive) if any, you may consider the sense of wrong and insult to the Plaintiff Lewis, Inc., and the damage to his reputation, if any as a result of the wrongful acts, if any, of the Defendant Delhi Pipeline Corporation." Special issues 4 and 5 should not have been submitted.

However, the denial of the exemplary damages by the trial court when judgment was entered, cured such error.

At the time of the trial, appellee announced to the court that Lewis was withdrawing and abandoning its claim for libel and slander, and that in lieu thereof it was seeking punitive damages for malicious breach of contract. The rule of law is that in order to permit a recovery of exemplary or punitive damages, the breach of contract must be attended by some intentional wrong, injury, abuse or gross negligence which amounts to an independent tort. The fraudulent intent done with a fraudulent act is not a sufficient basis for the awarding of punitive damages. Unless the appellee having alleged and produced some evidence of some willful acts of violence, malicious or oppressive conduct, then the trial court would not be authorized to submit an issue. If on the other hand appellee had plead and proved such tortuous act, then he would have to go one step further and have a finding that the principal (corporation) authorized, ratified or approved the act; or that the person responsible for the act was representing the appellant corporation in his managerial capacity and acting within the scope of his employment. I am unable to find from appellee's pleading, such an act or count that would entitle him to an issue for exemplary damages. Macfadden's Publications v. Hardy, Tex. Civ.App., 95 S.W.2d 1023 (1936, wr. ref.).

The conduct complained of by the appellee in its pleadings may have been a separate and independent cause of action for actual and punitive or exemplary damages. However, we are not called upon to decide this point. In this case the independent tort must be coincident to the contract breach. Tortuous conduct committed after the breach of contract, no matter how malicious or inexcusable will not form the basis for recovery of punitive damages for a breach of contract. Oklahoma Fire Insurance Co. v. Ross, Tex.Civ.App., 170 S.W. 1062. In the Oklahoma Fire Insurance Co. v. Ross case, the Court was called upon to examine a judgment awarding actual damages for the breach of contract and in addition punitive damages. The Court said:

"* * * the fact that the proof may have shown a cause of action for slander afforded no ground for a recovery of punitory damages for a breach of the contract, when the slander referred to was no part of and not connected with the breach of the contract. Hence we conclude that the plaintiff was not entitled to recover anything as punitory damages, and the court should have so instructed the jury."

See 25 C.J.S. Damages § 120, pp. 1126–1129.

As to the other points alleged as error by the appellant, a review of the evidence discloses that much of the testimony complained of grew out of the actual breach of the contract by which the court submitted issues as to damages for such breach. In the Oklahoma Fire Insurance Co. v. Ross, supra, it was contended that reversible error was not committed in permitting the plaintiff to introduce testimony tending to sustain the slanderous charges, where such damages were not allowed. The Court said and I agree that:

"* * * If it be conceded that the testimony referred to was not admissible, we see no reason to suppose that it had any influence with the jury in determining whether or not the insurance company had breached the contract, and the amount of actual damages the plaintiff was entitled to recover for such breach. Doubtless that testimony was considered by the jury and spent its full force in determining the question and of the amount of punitory damages; but, as we have concluded to reverse and render upon that issue, we hold that the insurance company is entitled to no further relief because of the admission of that testimony." Oklahoma Fire Insurance Co. v. Ross, supra.

I am not convinced, therefore, that the appellant has demonstrated that such error that has been complained of and committed, amounted to such a denial of the rights of the appellant, as was reasonably calculated to cause, and probably did cause, the rendition of an improper judgment in this case. Rule 434, T.R.C.P. I concur in the result that the judgment of the trial court should be affirmed.

## OPINION ON MOTION FOR REHEARING

SHARPE, Justice.

As a part of its motion for rehearing appellant moves for findings of fact relating to its points numbers five, eleven and eighteen. These points involve a contention that because each of the jury answers to special issues 1, 2 and 3 was against the overwhelming weight and preponderance of the evidence that the trial court erred in refusing to grant a new trial. In view of appellant's request, further consideration will be given to these points. Under the contentions made, the Court of Civil Appeals considers and weighs all evidence in the case, even though there is some evidence of probative force to support the verdict. In re King's Estate, 150 Tex. 662, 244 S.W. 2d 660 (1951).

The jury found in answer to special issue 1 in substance that on October 17, 1963 appellee Lewis was proceeding with due diligence on the contracts with appellant. Although much evidence pro and con was introduced by both sides on the issue, it is apparent that the jury accepted the testimony of Lewis' witnesses, and it could have concluded that some of the evidence offered by Delhi was favorable to Lewis' position of due diligence. The testimony tended to show that Lewis started work on the hardest part of the job, which was the slowest part of the work, and that this was good pipeline practice; that Lewis used the best equipment and best men available for the

work; that the work progressed constantly during the time Lewis was allowed to stay on the job; that Lewis never abandoned the contract and even worked on Sunday; that inspectors for Delhi constantly interfered with and obstructed the work, requiring excessive jeeping or testing of the pipe for wrapping defects; that delays were caused by the furnishing of defective pipe by Delhi; that Delhi failed to furnish profiles for bends in the pipe under creek crossings, failed to supply pipe in proper time and to legally clear the right of way; that Delhi required wider ditch than specified and compelled repairs of pipe not called for by the specifications; that, despite harassment, Lewis corrected all things demanded of him. Delhi's basic position is that the testimony shows that much of the work done by Lewis was not to the satisfaction of Mr. C. P. Butler, its representative; that many objections were made by him, that Butler was not satisfied with the way the work was progressing.

We have held that special issue 1 was correctly submitted as a controlling issue and that Butler's dissatisfaction with Lewis' work was not conclusive. We adhere to our holding that the jury answer to that issue was supported by factually sufficient evidence that Lewis was proceeding with due diligence on the contracts. The answer to special issue 1 was not against the overwhelming weight and preponderance of the evidence so as to be manifestly wrong and unjust.

By the answers to special issues 2 and 3 the jury found that Lewis had incurred expenses in performance of the contracts amounting to $17,451.50 and would have derived a profit of $7,500.00 if allowed to complete the same. Evidence was introduced in detail concerning the expenses incurred by Lewis, and there was testimony that the amount found by the jury was necessary and reasonable. These costs were itemized on an exhibit and testified to by Lewis' bookkeeper. One of Delhi's repre-

sentatives testified that 20% of the work had been completed which was of the value of $5,000.00, and another testified that 50% of the 8⅝" pipe was complete and 15% of the over-all job was complete; that the reasonable value of work done by Lewis was $8,000.00; that labor was the largest expense; and that most of the work on a large segment of the pipeline had been done. Lewis testified as to his estimated costs and profit and outlined the basis for same. He estimated his profit at between $9,500.00 and $10,000.00. One of Delhi's representatives agreed that a reasonable profit on the job, which involved $58,375.00, would have been 20%. On that basis the profit would have been $11,774.00. The jury finding of $7,500.00 for reasonably expected profit is well within the testimony offered. The answers to special issues 2 and 3 are, in each instance, not against the overwhelming weight and preponderance of the evidence so as to be manifestly wrong and unjust.

The findings contained in this opinion on rehearing and in our original opinion, along with the jury findings will constitute the findings in response to the motion of appellant in connection with its points five, eleven and eighteen.

Appellant's motion for rehearing is without merit and is overruled.

NYE, Justice (concurring).

Appellant in his motion for rehearing has again attempted to demonstrate the harmful effect of the admission of evidence concerning exemplary damages. Each case must be looked at separately to determine if reversible error was committed; "whether the error affected the result". 31 TLR 1, "The Doctrine of Harmless Error in Texas", Robert W. Calvert, Chief Justice, Supreme Court of Texas. Although the admission of such evidence was error, it was directed toward the exemplary damage special issues and spent its full force in determining these questions. Rule 434, T.R.C.P. I concur in the result.